

FILED

Jun 01 2018, 7:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEYS FOR APPELLANTS | ATTORNEYS FOR APPELLEE |
|---|---|
| Robert L. Burkart | Darren A. Craig |
| Jean M. Blanton | Michele Lorbieski Anderson |
| Ziemer Stayman Weitzel & Shoulders, LLP | Frost Brown Todd LLC |
| Evansville, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| BioConvergence, LLC, and Alisa K. Wright, | June 1, 2018 |
| *Appellants-Defendants*, | Court of Appeals Case No. 53A04-1708-PL-1810 |
| v. | Appeal from the Monroe Circuit Court |
| Julie Menefee, | The Honorable Judith A. Stewart, Special Judge |
| *Appellee-Plaintiff*. | Trial Court Cause No. 53C01-1309-PL-1742 |

**Brown, Judge.**

[1] BioConvergence, LLC ("BioConvergence") and Alisa K. Wright ("Alisa") appeal the trial court's January 12, 2017 order addressing summary judgment and denying their request for attorney fees and the trial court's July 14, 2017 order denying their claim for attorney fees. BioConvergence and Alisa raise two issues which we consolidate and restate as whether the trial court clearly erred or abused its discretion in denying their request for attorney fees. We affirm.[1]

## Facts and Procedural History

[2] Julie and Greg Menefee met Alisa and her husband, Lance, in 1992 and became friends. BioConvergence, a service provider to the life sciences industry, was organized in 2004 by Alisa, Lance, John Brooks, and Jeff Schwegman, had its grand opening in April 2006, and had its first full year of doing work in 2007. Since its inception, Alisa was a majority member of BioConvergence. In October 2005, Greg accepted Alisa's invitation to join BioConvergence's Board of Advisors. After joining the Board of Advisors, Greg signed a confidentiality agreement on October 18, 2005.

[3] In late 2007, Alisa contacted Greg and asked if he and Julie would be able to loan BioConvergence $400,000. Alisa told Greg and Julie that she had an agreement with "Chase for a line of credit that they backed off of and so she needed the money to be able to have operating capital for BioConvergence."

---

[1] On April 18, 2018, we held oral argument in Indianapolis. We thank counsel for their well-prepared advocacy. We also compliment Judge Stewart on her thorough orders.

Transcript Volume 4 at 96-97. On November 21, 2007, Alisa sent Greg an email message, which stated in part: "As you and Lance are meeting later this morning, you'll want to take a look at this when you talk. This is a draft valuation and Blue & Co is doing a review on it. Based on the discussion I had with Blue, the valuation is in the ballpark." Plaintiff's Exhibit 60.

[4] On December 19, 2007, Alisa sent an email to Greg, which was addressed to "Greg and Julie" and stated in part:

> On behalf of the [BioConvergence] owners, we welcome you to our group and appreciate your contributions as we go about making [BioConvergence] a successful business venture!
>
> The plans are for the Menefees to become owners in Jan 2008. Until that time, they will help us meet short term cashflow needs by loans under promissory notes. Some additional details and action items are:
>
> * * * * *
>
> 3. Other
>
> a. Greg and Julie to decide who will make the capital contribution (Greg & Julie, Greg, Julie, Julie's trust, etc.)
>
> b. Current valuation of the company confirmed by Blue & Co, BioC's accounting firm, in December 2007 at $9,267,841 – setting the new value per unit at $131.05.
>
> c. $400,000 + $131.05/unit = 3052.39 B1 units or approximately 4% of the company (total could vary based on interest accrued and how it is handled)

Plaintiff's Exhibit 68. In December 2007 and February 2008, Julie and Greg loaned BioConvergence $400,000 evidenced by promissory notes which were unsecured.

On November 17, 2008, Julie, as the individual "in which Subscription is made," and Alisa, CEO of BioConvergence, entered into a "BIOCONVERGENCE LLC CLASS B-1 UNIT SUBSCRIPTION AGREEMENT" (the "Subscription Agreement"). Plaintiff's Exhibit 9. The agreement provided in part that Julie "subscribes for and agrees to purchase 3,333 Class B-1 Units of membership interest (the 'Units') of BioConvergence LLC, an Indiana limited liability company (the 'Company'), at a price of $120.00 per Unit, for a total purchase price of $400,000.00 (the 'Purchase Price')." *Id.*

The Subscription Agreement states:

> 2. <u>Representation and Warranties of Undersigned</u>. The undersigned hereby represents and warrants as follows:
>
> (a) All information provided to the Company by the undersigned is true and correct in all respects as of the date hereof.
>
> (b) The undersigned has sufficient knowledge and experience in business and financial matters to evaluate the merits and risks of an investment in the Company.
>
> (c) The undersigned has been afforded access to all material books, records and contracts of the Company, and the undersigned has had an opportunity to ask questions of and receive answers from the Company, or a person or persons acting on its behalf, concerning the terms and conditions of this

investment; and all such questions have been answered to the full satisfaction of the undersigned.

* * * * *

(e) The undersigned understands that the sale of the Units has not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or any state securities law in reliance on an exemption therefrom for non-public offerings and further understands that the sale of the Units has not been approved or disapproved by the United States Securities and Exchange Commission, or any other federal or state agency.

(f) The undersigned is acquiring the Units for the undersigned's own account, for investment purposes only, and not with a view to the sale or other distribution thereof, in whole or in part, and is aware that there are substantial restrictions on the transferability of the Units. The undersigned must bear the economic risk of an investment in the Units for an indefinite period of time because the sale of the Units has not been registered under the Securities Act, and therefore, the Units cannot be sold unless such sale is subsequently registered under the Securities Act or an exemption from such registration is available. The undersigned has no right to require the Company to (i) register the Units under federal or state securities law at any time, or join in any future registration, or (ii) take the action required to make Rule 144 under the Securities Act available for resale of the Units.

(g) The undersigned agrees that the Units purchased will not be sold, transferred, pledged or hypothecated without registration under the Securities Act and any applicable state securities laws, or until the undersigned has obtained an opinion of counsel satisfactory to the Company that such registration is not required in connection with such transaction.

(h) The undersigned agrees that any certificate representing the Units may contain the following legend:

"THE SECURITIES REPRESENTED HEREBY WERE ACQUIRED FOR INVESTMENT ONLY AND NOT FOR RESALE, SUCH SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAW (COLLECTIVELY, THE "*SECURITIES LAWS*").

SUCH SECURITIES MAY NOT BE SOLD, ASSIGNED, TRANSFERRED, PLEDGED OR HYPOTHECATED UNLESS (1) THE SALE OF SECURITIES IS FIRST REGISTERED UNDER THE SECURITIES LAWS, OR (2) THE COMPANY SHALL HAVE RECEIVED AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT REGISTRATION UNDER THE SECURITIES LAWS IS NOT REQUIRED."

The undersigned further agrees that the Company may issue stop transfer instructions to its transfer agent (if any) or make a notation to such effect on its appropriate records.

(i)  The undersigned agrees that no commission or other remuneration shall be paid to any person in connection with the offer or sale of the Units.

(j)  The undersigned falls within one or more of the categories indicated below by the Subscriber's initials next to each applicable category (<u>INITIAL</u> ALL THAT ARE APPLICABLE):

__√__        <u>Individual $1,000,000 Net Worth Test</u>.  Any natural person whose net worth, or joint net worth with that person's spouse, at the time of the Subscriber's purchase exceeds $1,000,000.

__√__        <u>Individual $200,000 Income Test</u>.  Any natural person who had an individual income in excess of

$200,000 in each of the two most recent years or a joint income with that person's spouse in excess of $300,000 in each of those years and who has a reasonable expectation of reaching the same income level in the current year.

_____ Other Persons. Persons not meeting any of the above, but otherwise acceptable to the Company. Not more than 35 such other persons may be accepted.

The foregoing representations and warranties shall be true and accurate as of the date hereof, and as of the date of delivery of the Purchase Price to the Company and shall survive such delivery.

3. Representations and Warranties of the Company.

* * * * *

5. Indemnification.

(a) The undersigned acknowledges that the undersigned understands the meaning and legal consequences of the representations and warranties contained in paragraph 2 hereof, and he hereby agrees to indemnify and hold harmless the Company and each director, officer, employee and agent thereof from and against any and all loss, damage or liability due to or arising out of breach of any representation or warranty of the undersigned contained in this Subscription Agreement.

(b) The Company acknowledges that the Company understands the meaning and legal consequences of the representations and warranties contained in paragraph 3 hereof, and hereby agrees to indemnify and hold harmless the undersigned and his heirs, personal representatives and assigns from and against any and all loss, damage or liability due to or arising out of breach of any representation or warranty of the Company contained in this Subscription Agreement.

*Id.*

In July 2012, Alisa called Greg and asked for Julie, but she was not there, and Alisa told Greg that the unit value for BioConvergence had dropped to $15.50. Greg received a power of attorney and requested documents from BioConvergence.

On August 12, 2013, Julie filed a complaint against BioConvergence and Alisa asserting: Count I, injunction to compel production of corporate books and records; Count II, securities fraud; Count III, fraud; and Count IV, breach of fiduciary duty. Julie's complaint alleged that facts common to all counts included in part that Alisa, on behalf of BioConvergence, represented that the value of the class B units was $120 per unit pursuant to a valuation prepared by Blue & Company, LLC, but "[o]n information and belief, Blue & Company did not prepare a valuation of [Julie's] Class B Units." Appellants' Appendix Volume 2 at 64.

On December 8, 2014, Julie filed an amended complaint alleging: Count I, securities fraud; Count II, fraud; and Count III, breach of fiduciary duty. With respect to Count I, securities fraud, Julie cited Ind. Code § 23-19-5-1 and alleged that BioConvergence and Alisa omitted to state a material fact necessary in order to make the statements not misleading, Alisa knew the valuation was not prepared by Blue & Company when she made the statement to her, Alisa knew that Julie's units were not worth $120 a unit when she sold her 3,333.33 units for $400,000, and Julie relied on Alisa's false statements

when she purchased the class B units. With respect to Count III, breach of fiduciary duty, Julie alleged that Alisa, as an officer and majority member in BioConvergence, owed fiduciary duties to Julie, a minority member in BioConvergence, and that Alisa breached her fiduciary duties by intentionally misrepresenting the value of Julie's units, intentionally misrepresenting that Julie's units were valued at $120 a unit by Blue & Company, and "willfully mismanaging BioConvergence, among other breaches." *Id.* at 73.

[10] On January 30, 2015, BioConvergence and Alisa filed an answer to Julie's amended complaint and a counterclaim which alleged that Julie breached the Subscription Agreement. BioConvergence and Alisa denied that Alisa told Julie that a valuation was prepared by Blue & Company. They asserted twenty-one affirmative defenses. They also asserted a counterclaim alleging that the Subscription Agreement included representations by Julie that she had access to all BioConvergence records and the opportunity to ask questions concerning the investment which were answered to her satisfaction and that she agreed to indemnify BioConvergence and its officers, directors, agents, and employees due to any breach of representation in the Subscription Agreement. They asserted that on November 4, 2014, Julie testified in a deposition that her "claims relating to her purchase of the [BioConvergence] B-1 Units in November 2008 and her ownership thereof are based on information lacking from [BioConvergence] in November 2008, that [BioConvergence] documents available to her in November 2008 which she chose not to review were not accurate and an alleged diminution of value of her [BioConvergence] B-1

units." *Id.* at 83.  They asserted that, "[a]s a result of her actions and omissions, Julie [] has breached the Subscription Agreement" and that they were "entitled to relief under the Subscription Agreement including indemnity by Julie [] and to recover their damages, including attorneys' fees and expenses, incurred in defending Julie['s] Complaint as a result of Julie['s] breach of the Subscription Agreement." *Id.*

[11]  In her Supplemental Answers to Defendants' Third Set of Interrogatories dated June 1, 2015, Julie was asked to "[s]pecify in detail each fact upon which [she] base[d] the allegation in Count III of [her] Amended Complaint that Alisa [] willfully mismanaged [BioConvergence], the person from whom [she] obtained information concerning the same, and the date of each act or omission [she] claimed constitutes willful mismanagement." *Id.* at 189.  Julie answered:

> Answer:
>
> [Julie] objects to this interrogatory as duplicative of questions that were asked and answered by Julie Menefee and Greg Menefee (in his capacity as Power of Attorney for Julie Menefee) at their depositions in this matter.  [Julie] further objects to this interrogatory as seeking premature disclosure of expert opinions from [Julie].
>
> Supplemental Answer:
>
> Subject to, and without waiving her objections, [Julie] states that Alisa [] willfully mismanaged [BioConvergence] by misrepresenting that [BioConvergence's] accounting firm, Blue & Co., performed valuations of [BioConvergence] that Blue & Co. did not perform; setting the price of [BioConvergence] units without a rational basis (For example, Alisa [] approved

[BioConvergence's] purchase of units from her husband, Lance Wright in 2010 and 2011 for $140 per unit and sold the same units to Kathy Eddy in 2010 and 2011 for $140 per unit, but only paid Kathy Eddy $15.50 per unit when [BioConvergence] bought back those same units from Kathy Eddy in 2012.); manipulating [BioConvergence's] financials to make it appear that [BioConvergence] was profitable when it was not; failing to be present at [BioConvergence's] offices; failing to stay informed about [BioConvergence's] operations; failure to make decisions regarding the direction of [BioConvergence]; paying above-market rent to Great Oak Tree (a company that is partially owned by Alisa []); withholding information from members of [BioConvergence] about [BioConvergence's] financial condition; not holding annual member meetings; misrepresenting the valuation of [BioConvergence] during member meetings; firing key [BioConvergence] staff members without cause; filling all of the positions on [BioConvergence's] board of directors beyond her own position with paid consultants; taking actions to alienate [BioConvergence's] major client Eli Lilly; and spending excessive [BioConvergence] funds on attorneys' fees.

*Id.* at 189-190.

[12] On July 17, 2015, BioConvergence and Alisa filed a motion for summary judgment. On September 18, 2015, Julie filed a response in opposition to the motion.

[13] On April 6, 2016, the trial court entered an order which states:

**Plaintiff's Motion for Summary Judgment on the Amended Counterclaim for Breach of Contract and Defendants' Cross Motion for Summary Judgment on the Amended Counterclaim as to Liability**

[I]n her complaint, Julie Menefee does not claim that prior to her purchase of the units the Defendant failed to provide her with the valuation or that Julie Menefee otherwise did not have access to the records. In the Subscription Agreement, she does not represent that she reviewed all of the available records. Her claim that the valuation was fraudulent is not a breach of the representations she made in Section 2(c) of the Subscription Agreement.

Defendants also assert Julie Menefee breached her representations in Section 2(c) of the Subscription Agreement by claiming in her Amended Complaint that she relied on an alleged representation that BioConvergence, LLC's accounting firm "prepared" the $120 valuation. Defendants argue Julie Menefee had access to all BioConvergence, LLC records; through her power of attorney she had received the $120 valuation; and she was advised BioConvergence, LLC prepared the valuation and the accountant only reviewed it. Consequently, Defendants argue her claim that she relied on who prepared the valuation rather than the valuation itself breaches Section 2(c) where she represented she had access to the valuation and the opportunity to review it and ask questions of BioConvergence, LLC or the accountant.

Again, the court finds no genuine issue of material fact with respect to this claim. In her complaint, Julie Menefee does not claim that prior to her purchase of the units she did not have access to the valuation nor that she did not have the opportunity to review it or ask questions regarding the valuation. In the Subscription Agreement she does not represent that she relied only on the records she reviewed and/or were available to her. Her claim that Alisa Wright represented to her that the accountant prepared the valuation and that she relied on this verbal representation does not constitute a breach of Section 2(c) of the Subscription Agreement.

### Defendants' Motion for Summary Judgment on the Amended Complaint

Defendants assert Plaintiff's fraud claims and breach of fiduciary duty claim are not actionable as Plaintiff cannot rely on expressions of opinion and because Plaintiff had access to all information necessary to review the valuation methodology. Defendants claim Plaintiff's willful mismanagement claim fails because Plaintiff is attempting to assert a derivative claim without requisite authority and because she lacks evidence to support the claim.

### 1. Count I Securities Fraud

In Count I of her complaint, Plaintiff alleges the Defendants violated the Indiana Securities Act, I.C. 23-19-5-1 by informing Plaintiff before her purchase of the units of BioConvergence, LLC that the units were valued at $120 per unit by Blue & Co., LLC. Defendants first assert that because valuations and opinions of value are not actionable, a representation as to who prepared the valuation is not material and cannot form the basis for a securities fraud claim. "Expressions of opinion cannot be the basis for an action in fraud." *Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30-31 (Ind. Ct. App. 2005) (internal citation omitted). Because statements of value are regarded as mere expressions of opinion, Plaintiff cannot state a claim for actionable fraud based upon Defendants' representation regarding the units' valuation. *Id.* The court does not read Count I of the Amended Complaint to assert a claim for securities fraud based on the Defendants' alleged misrepresentation of the value of the BioConvergence, LLC units, rather on the alleged misrepresentation that the valuation was prepared by Blue & Co., LLC. However, to the extent Count I may be read to assert a claim for securities fraud based on the Defendants' alleged misrepresentation of the value of the BioConvergence, LLC units, Defendants are entitled to summary judgment.

The court further finds, however, that Defendants are not entitled to summary judgment on Count I to the extent it asserts a claim for securities fraud based on the alleged misrepresentation that the $120 valuation was prepared by Blue & Co., LLC. The court

finds the Defendants have not met their burden on summary judgment of establishing that this factual issue is not material under the summary judgment standard or under the standard applied to securities fraud claims.

Defendants also assert Plaintiff could not reasonably rely on any representations because she had access to all BioConvergence, LLC information and failed to conduct any due diligence in assessing her investment in BioConvergence, LLC. Defendants assert that liability under the securities laws exists only when there is a substantial likelihood that the misrepresentation significantly altered the total mix of information that the investor possessed.

In general, a person relying on a representation, "is bound to use ordinary care and diligence to guard against fraud; however, the requirement of reasonable prudence in business transactions is not carried to the extent that the law will ignore an intentional fraud practice(sic) on the unwary." *Soft Water Utilities, Inc. v. LeFevre*, 308 N.E.2d 395, 398 (Ind. App. 1974). *See also*, *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522 (7th Cir. 1985). The Plaintiff claims such an intentional fraud, claiming that Defendant Wright represented Blue & Co, LLC had prepared the valuation when Ms. Wright knew the representation to be false.

However, the courts in both *LeFevre* and *Angelos* recognized that liability is not absolute even with an intentional misrepresentation. The Seventh Circuit in *Angelos* recognized three circumstances under which even lies are not actionable. However, none of those circumstances have been shown to exist in this case so as to warrant summary judgment. Defendants' designated materials do not establish that any lie was contradicted by written truthful information; that the alleged lie or omission did not significantly affect the total mix of Plaintiff's information; or that the missing information was more readily accessible to Plaintiff than to Defendant. *See*, *Angelos*, 762 F.2d at 530. In *LeFevre*, the court noted that "[a] person has a right to

rely upon representations *where the exercise of reasonable prudence does not dictate otherwise.*" *Soft Water Utilities, Inc. v. LeFevre, supra,* at 398, *citing, Voorhees v. Cragun,* 112 N.E. 826 (Ind. App. 1916) (emphasis added.) The court finds that a genuine issue of material fact exists as to whether Plaintiff's asserted reliance on Defendant Wright's alleged intentional misrepresentation occurred "where the exercise of reasonable prudence does not dictate otherwise." *Id.* Consequently, Defendants have not met their burden on summary judgment.

Defendants also assert that Plaintiff's securities fraud claim is time barred. Pursuant to I.C. 23-19-5-9(g), Plaintiff was required to bring her action for securities fraud within three years of Plaintiff's discovery of the violation. Defendants' designated materials do not establish that Plaintiff should have known of the injury prior to July 2012 when Plaintiff was informed the value of her units had dropped from $140 to $15.50. The action was commenced within three years of July 2012. Defendants' motion for summary judgment on this issue is denied.

## 2. Count II Common Law Fraud

Count II of Plaintiffs' [sic] Amended Complaint asserts common law fraud based on the alleged intentional misrepresentation by Defendant Wright that Blue & Co., LLC had prepared the $120 valuation. Count II also asserts that Defendant Wright knew the units were not worth $120 when she sold them to Julie Menefee. Similar to the securities fraud claim, the court finds that to the extent Count II may be read to assert a claim for fraud based on the alleged misrepresentation of the value of the BioConvergence, LLC units, Defendants are entitled to summary judgment, but that Defendants are not entitled to summary judgment to the extent Count II asserts a claim for fraud based on the alleged misrepresentation that the $120 valuation was prepared by Blue & Co., LLC. Defendants have failed to establish as a matter of law that the alleged misrepresentation by Alisa Wright is not actionable nor that as a matter of law Plaintiff was not entitled to rely on that representation.

### 3. Breach of Fiduciary Duty

Count III of Plaintiffs' Amended Complaint claims that Alisa Wright, as an officer and majority member of BioConvergence, LLC, owed fiduciary duties to Plaintiff as a minority member, and that Defendant Wright breached this duty by intentionally misrepresenting the value of the units, intentionally misrepresenting that the units were valued at $120 by Blue & Co., LLC, and willfully mismanaging BioConvergence, LLC. In seeking summary judgment, Defendants assert that Defendant Wright owed no fiduciary duty to Plaintiff prior to Plaintiff becoming a minority member of BioConvergence, LLC. Defendants also assert that as a matter of law, Alisa Wright did not have the authority to act on behalf of BioConvergence, LLC in her capacity as a member.

Plaintiff relies on the case of *Fiederlein v. Boutselis*, 952 N.E.2d 847 (Ind. Ct. App. 2011) to assert that Defendant Wright owed Julie Menefee fiduciary duties as a potential member of a closely-held limited liability company during negotiation of their membership. However, in *Fiederlein*, the aggrieved party already was a member of the LLC when negotiations in question were conducted. Nothing in *Fiederlein* establishes a fiduciary duty to potential members of a limited liability company. The court finds as a matter of law that Defendant Wright owed no fiduciary duty to Julie Menefee prior to Julie Menefee's membership in BioConvergence, LLC. Consequently, Defendant is entitled to summary judgment on the breach of fiduciary duty claim to the extent it is based on an alleged misrepresentation of the value of units or who prepared the valuation prior to Julie Menefee purchasing her Class B units on November 17, 2008.

Once Plaintiff became a member of BioConvergence, LLC, the members were in a fiduciary relationship to each other and were required to deal fairly, honestly, and openly with the company and the other members. *See*, *Riggin v. Rea Riggin & Sons, Inc.*, 738 N.E.2d 292, 307 (Ind. Ct. App. 2000); *Barth v. Barth*, 659 N.E.2d 559, 561 (Ind. 1995); *Purcell v. Southern Hills Investment, LLC*, 847

N.E.2d 991, 997 (Ind. Ct. App. 2006) (holding "common law fiduciary duties, similar to the ones imposed on partnerships and closely-held corporations, are applicable to Indiana LLCs.") "This duty attaches to acts done in the capacity of a director, officer, or shareholder." *Riggin*, 738 N.E.2d at 307. Consequently, Defendant Wright owed a fiduciary duty to Plaintiff regardless of whether Defendant Wright was acting as CEO or a member of BioConvergence, LLC.

Defendant Wright asserts Julie's claim for breach of fiduciary duty by willful mismanaging BioConvergence, LLC constitutes, or can only be brought as, a derivative action, not a direct action. However, the court finds Plaintiff's claim states a direct action and may be permissible. Our Indiana Supreme Court has adopted the American Law Institute rule as follows:

> In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons. A.L.I., *Principles of Corporate Governance* § 7.01(d).

*Barth*, *supra*, 659 N.E.2d at 562. Defendants have failed to show as a matter of law that Plaintiff's direct action is not permissible in this case.

The court finds the Defendant has failed to establish an absence of genuine issues of material fact regarding whether Defendant Wright willfully mismanaged BioConvergence, LLC and that summary judgment is not appropriate on the breach of fiduciary duty claim regarding alleged willful mismanagement.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment on the Amended Counterclaim for Breach of Contract is granted, and Defendants' Cross Motion for Summary Judgment on the Amended Counterclaim as to Liability is denied.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Plaintiff's Amended Complaint is granted in part and denied in part. Defendants' motion is granted to the extent that Count I and Count II assert claims for securities and common law fraud based on the Defendants' alleged misrepresentation of the value of the BioConvergence, LLC units. Defendants' motion for summary judgment on Counts I and II is denied in all other regards, including with respect to claims for securities and common law fraud based on Defendant Wright's alleged misrepresentation that the $120 valuation was prepared by Blue & Co., LLC. Defendants' motion for summary judgment on Count III is granted as to the claim that Defendant Wright owed and breached any duty to Plaintiff prior to Plaintiff's membership in BioConvergence, LLC, including any representation prior to such membership that the units were valued at $120 per unit and that the valuation was prepared by Blue & Co., LLC. Defendants' motion for summary judgment as to Count III is otherwise denied.

**IT IS FURTHER ORDERED** the court finds there is no just reason for delay and hereby directs entry of judgment in favor of the Plaintiff, Julie Menefee, and against the Defendants, Alisa Wright and BioConvergence, LLC on Defendants' Alisa Wright and BioConvergence, LLC Counterclaim. Judgment is entered in favor of Defendants, BioConvergence, LLC and Alisa Wright on Plaintiff's claims in Count I and Count II for fraud based on the Defendants' alleged misrepresentation of the value of the BioConvergence, LLC units. Judgment is entered in favor of the Defendant, Alisa Wright, and against the Plaintiff, Julie Menefee, on the claim included in Count III that Defendant Wright owed and breached any duty to Plaintiff prior to

> Plaintiff's membership that the Class B units were valued at $120 per unit and that the valuation was prepared by Blue & Co., LLC.

Appellants' Appendix Volume 2 at 93-99.

[14] On October 12, 2016, Alisa filed a motion for summary judgment on Count III of Julie's amended complaint. Alisa pointed to a transcript of a July 8, 2016 hearing, a deposition of Julie dated August 25, 2016, and other evidence. On December 21, 2016, Julie filed a response in opposition to Alisa's motion. On January 3, 2017, Alisa filed a brief in reply to Julie's response.

[15] On January 12, 2017, the court entered an order which states:

> The court, having conducted a hearing on January 10, 2017 on Defendant Alisa Wright's Motion for Summary Judgment on Count III of Plaintiff's Amended Complaint, and having taken the motion under advisement, now finds the motion should be granted in part and denied in part.
>
> Count III of Plaintiff's Amended Complaint states a claim for breach of fiduciary duty including willful mismanagement of BioConvergence, LLC. The claim is asserted against Defendant Wright as a member, director, and officer of the limited liability company. The court now finds that Article 4, section 4.1 of the applicable Operating Agreement of BioConvergence LLC, places responsibility for the management of BioConvergence LLC business with its Board of Directors. Section 4.5 grants specific powers to the Chief Executive Officer, including executing leases on behalf of the limited liability company. Consequently, while Defendant Wright owed a fiduciary duty to other members whether she was acting in her capacity as a member, officer, or director, Defendant Wright's liability for alleged mismanagement of BioConvergence lies only in her capacity as director or officer.

Consequently, the court now grants summary judgment in favor of the Defendant, Alisa Wright on the portion of the breach of fiduciary duty claim that asserts willful mismanagement against her as a member and will proceed to address the claim as asserted against Mr. [sic] Wright as a director and officer.

Plaintiff has identified fifteen bases for her claim of willful mismanagement. At the hearing, it was discussed that it would be beneficial to the efficient preparation for, and trial of, this case if the court addressed each basis for the claim.

The court now grants summary judgment in favor of Defendant Alisa Wright and against the Plaintiff, Julie Menefee, on Count III of the Amended Complaint on each of the following bases for breach of fiduciary claim:

- Manipulating BioConvergence LLC's financials to make it appear that the company was profitable when it was not;
- Failing to be present a [sic] BioConvergence LLC's office' [sic][;]
- Failing to make decisions regarding the direction of BioConvergence LLC[;]
- Withholding information from members of BioConvergence LLC about BioConvergence LLC's financial condition;
- Not holding annual member meetings;
- Firing key BioConvergence LLC staff members without cause;
- Filling all of the positions on BioConvergence LLC's Board of Directors with paid consultants;
- Taking actions to alienate BioConvergence LLC's major client;
- Spending excessive BioConvergence LLC funds on attorney fees; and
- Having Alisa Wright as the only Board member from 2008-2013.

For each of these bases, even if the breaches were proven, Plaintiff has failed to come forward with any designated materials raising a genuine issue of material fact as to whether she suffered damages as a result of these alleged breaches. There has been no evidence indicating these actions caused Ms. Wright [sic] damages.

The court also grants summary judgment in favor of Defendant Alisa Wright and against the Plaintiff, Julie Menefee, on Plaintiff's claim for breach of fiduciary duty and willful mismanagement for allegedly spending excessive BioConvergence LLC funds on attorney fees. The claim for excessive attorney fees relates to attorney fees spent by Defendant Wright in defense of the very claim filed by Plaintiff and in defense of a related action filed by the former CFO of BioConvergence LLC. Plaintiff asserts Defendant Wright should have settled these cases. Both cases remain pending, and any claim for excessive attorney fees is premature as it is unknown at this time who will prevail in the actions. On the claim for breach of fiduciary duty for expending excessive attorney fees, proof of damages and excessive attorney fees is an element of a claim that must be proven before Plaintiff can prevail. Plaintiff has failed to designate any materials showing potential entitlement to attorney fees based on any conduct other than failing to settle the cases. Such damages cannot be proved while the cases remain pending, and summary judgment in favor of Defendant Wright is appropriate. The court has bifurcated the remaining claims for attorney fees on the Plaintiff's fraud claims and Defendants' breach of contract claim, and those will be heard if appropriate following the jury trial.

Summary judgment also is granted in favor of Defendant Alisa Wright and against Plaintiff Julie Menefee on Count III of the Amended Complaint on the basis that Defendant Wright misrepresented that BioConvergence LLC's accounting firm, Blue & Co., performed the $120 valuation prior to Plaintiff's purchase of BioConvergence LLC units in November 2008. As

previously found by the court, Defendant Wright did not owe a fiduciary duty to Plaintiff Menefee until Ms. Menefee became a member of BioConvergence LLC. Consequently, any alleged misrepresentation prior to Ms. Menefee's purchase of the units is not actionable as a breach of fiduciary duty. As to any such alleged misrepresentation made or continuing after Plaintiff became a member, the Plaintiff has failed to come forward with any indication of damages she may have incurred by such misrepresentation.

Summary judgment also is granted in favor of Defendant Alisa Wright and against Plaintiff Julie Menefee on Count III of the Amended Complaint on the basis that Defendant Wright set the price of BioConvergence LLC units without a rational basis. In many ways, this is the heart of the matter between these parties. For a director or officer knowingly to set values on a company's units without any rational basis could well form the basis for a claim of willful mismanagement and breach of fiduciary duty. However, in this case, as the court understand [sic] the Plaintiff's claim, summary judgment is appropriate. There are three primary valuations at issue: the $120 valuation set when Ms. Menefee purchases her units; a subsequent $140 valuation; and the later valuation of Plaintiff's units at $15.50. It is the court's understanding that Plaintiff is not asserting the $15.50 price was set without a rational basis as that price was based on the analysis of Blue & Co. Rather, the court understands Plaintiff to challenge the values of $120 and $140 as being without rational basis. Again, because the $120 value was set prior to Defendant Wright owing Plaintiff a fiduciary duty, any lack of rational basis for that price cannot form the basis for a breach of fiduciary duty claim. With respect to the $140 price, Plaintiff has failed to come forward with any indication of how she may have been damaged by this valuation. If the court has misunderstood the Plaintiff's claim, and her claim does include an assertion that the price of $15.50 was set without a rational basis, counsel are respectfully requested to notify the court and this portion of the summary judgment order may be reconsidered.

The court denies summary judgment on Count III of the Amended Complaint on the basis that Defendant Wright allegedly paid excessive rent to Great Oak Tree. First, the court finds summary judgment is not appropriate based on the claim being a derivative rather than direct action. The court agrees any harm from this action generally would constitute injury to BioConvergence LLC, not Plaintiff Menefee individually. However, at this summary judgment stage, Defendant Wright has failed to establish the inapplicability of the exception created in *Barth v. Barth*, 659 N.E.2d 559 (Ind. 1995) allowing a member of a limited liability company to pursue a direct action for harm to the company under certain circumstances.

The closer question for the court is whether summary judgment is appropriate on the excessive rent claim because Plaintiff cannot prove damages or breach. Plaintiff has designated materials that reflect varying amounts of rent were paid by BioConvergence LLC to Great Oak Tree while [Alisa] was the CEO, and at times only director, of BioConvergence LLC and while Great Oak Tree was owned by Defendant Wright, her parents, her sister and a trust. Between 2008 and 2014, annual rent paid to Great Oak Tree varied from a low of $425,000 to a high of $650,000. As noted by Plaintiff, when an owner, director or officer of a company places her own interests in company leases above the interests of the company, such action may constitute a breach of fiduciary duty. However, Defendant Wright came forward with deposition testimony from Plaintiff's husband taken in July 17, 2015, that he had not done an assessment of BioConvergence LLC rent and the claim was speculative. Plaintiff, however, has designated materials showing what was paid in rent to Great Oak Tree. Neither Plaintiff nor Defendant Wright have designated evidence establishing what reasonable rent may have been. The court finds a genuine issue of material fact exists as to whether the rent was reasonable.

As summary judgment was denied in part as to Count III, Defendant Wright's request for attorney fees is denied.

*Id.* at 50-53.

[16] On January 23rd through the 26th of 2017, the court held a jury trial. The jury found that BioConvergence and Alisa did not commit securities fraud, did not commit fraud, and did not commit fraud that constituted criminal deception, that Alisa did not breach the fiduciary duties she owed to Julie, and that Julie breached the representation in section 2(b) of the Subscription Agreement that she had sufficient knowledge and experience in business and financial matters to evaluate the merits and risks of an investment in the company.

[17] On January 29, 2017, the court entered an order stating that the jury returned a verdict in favor of the Defendants on all remaining claims in Julie's amended complaint and returned a verdict in favor of the Defendants and against Julie on the Defendants' counterclaim. The court accepted the jury's verdict and entered judgment in favor of the Defendants and against Julie on Julie's amended complaint. Appellants' Appendix Volume 3 at 34. The court entered judgment on the issue of liability in favor of the Defendants and against Julie on the Defendants' counterclaim for breach of contract, specifically, breach of Section 2(b) of the Subscription Agreement. The order states: "The issues of damages, indemnity and attorney fees relative to the Counterclaim are bifurcated to be heard by the court, and a separate hearing date will be set." *Id.*

[18] On February 28, 2017, Julie filed a motion to correct error. On March 27, 2017, BioConvergence and Alisa filed a brief in opposition to Julie's motion. That same day, the Defendants filed a Motion for Assessment of Damages on

Counterclaim and for Entry of Judgment and a brief in support of the motion. BioConvergence and Alisa also filed a Consolidated Motion for Attorneys' Fees Under Ind. Code § 34-52-1-1 and for Revision of Summary Judgment Order under Trial Rule 54 as to Attorneys' Fees. They requested that the court enter an order awarding attorney fees and expenses in their favor in the amount of $732,018.39.

On May 19, 2017, Julie filed a Consolidated Reply in Support of Motion to Correct Errors and for Judgment on the Evidence and Response to Motion for Assessment of Damages. On May 31, 2017, Defendants filed a Reply Brief to Plaintiff's Consolidated Reply in Support of Motion to Correct Errors and for Judgment on the Evidence and Response to Motion for Assessment of Damages. That same day, Defendants also filed a Brief in Reply to Plaintiff's Opposition to Defendants' Consolidated Motion for Attorneys' Fees under Ind. Code § 34-52-1-1 and for Revision of Summary Judgment under Trial Rule 54 as to Attorneys' Fees.

On June 16, 2017, the court held a hearing on the motions. On July 14, 2017, the court entered an order which states:

> The court conducted a hearing on June 16, 2017 on
> Counterclaim Defendant Julie Menefee's Motion to Correct
> Errors and for Judgment on the Evidence; on Defendants'
> Consolidated Motion for Attorneys' Fees under I.C. 34-52-1-1
> and for Revision of Summary Judgment Order Under Trial Rule
> 54 as to Attorneys' Fees; and on Defendants/Counterclaimants'
> Motion for Assessment of Damages on Counterclaim and for

Entry of Judgment. Having taken the motions under advisement, the court now finds as follows:

Counterclaim Defendant Julie Menefee's Motion to Correct Errors and for Judgment on the Evidence is denied.

With respect to Defendants/Counterclaimants' Motion for Assessment of Damages on Counterclaim and for Entry of Judgment, the court finds the Defendants are not entitled to an award of damages on the jury's verdict in favor of defendants and against the plaintiff on defendants' counterclaim. The only damages sought by defendants for breach of the subscription agreement are attorney fees and costs incurred in defending plaintiff's complaint and in pursuing the counterclaim. Although the elements of damage are limited, the amount of damages sought is substantial, totaling $732,018.39. Of this figure, over $686,000 is sought for attorney fees, and the balance for other litigation expenses[.]

Under the "American Rule" each party generally is responsible for her own attorney fees, and attorney fees are not recoverable as damages in a breach of contract action absent a statute, rule or agreement to the contrary. *Flaherty & Collins v. BBR-Vision I, L.P.*, 990 N.E.2d 958, 966 (Ind. Ct. App. 2013), citing, *L.H. Controls, Inc. v. Custom Conveyor, Inc.* 974 N.E.2d 1031, 1046 (Ind. Ct. App. 2012[])[, *trans. denied*.] Under the American Rule, attorney fees cannot be characterized as consequential damages in a breach of contract action. [*Dale*] *Bland Trucking, Inc. v. Kiger*, 598 N.E.2d 1103, 1105 (Ind. Ct. App. Sept. 15, 1992), *citing*, *Indiana Insurance Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1093 (Ind. Ct. App. 1992). Indiana courts have recognized that when a breach of contract causes the other party to "engage in litigation with a third party and such action would not have been necessary but for the breach, attorney fees and litigation expenses may be awarded as breach of contract damages." *Flaherty*, *supra*, at 966. However, this exception is not available in a first party action. *Id.*

Counterclaimants rely on the indemnity provision in the subscription agreement to provide the basis for recovery of fees. That provision provides for the recovery of costs, but does not specify attorney fees. Indemnity provisions are strictly construed. *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132 (Ind. 1995). Although the counterclaimants cite cases in which attorney fees were recoverable without a specific provision for recovery of attorney fees, those cases initially involved third party claims for which the indemnitor failed to indemnify the indemnitee. *See*, *Fort Wayne Lodge, L.L.C. v. EBH Corp.*, 805 N.E.2d 876 (Ind. Ct. App. Apr. 6, 2004); *Bethlehem Steel Corp. v. Sercon Corp.*, 654 N.E.2d 1163 (Ind. Ct. App. 1995)[, *reh'g denied, trans. denied*]. These cases are consistent with the rule in *Flaherty*, *supra*. The action here, however, was a first party claim.

The indemnity provision in the subscription agreement does not include language clearly stating the provision applies to first party claims. "The general legal understanding of indemnity clauses is that they cover '"the risk of harm sustained by third persons that might be caused by either the indemnitor or the indemnitee. It shifts the financial burden for the ultimate payment of damages from the indemnitee to the indemnitor.'" *L.H.* at 1047 (quoting *Indianapolis City Market Corp. v. MAV, Inc.*, 915 N.E.2d 1013, 1023 (Ind. Ct. App. 2009))." *Flaherty*, *supra*, at 967. "There is no absolute prohibition against one party agreeing to indemnify the other party for first-party claims arising between those parties. . . . Where the plain language of the provision requires first-party indemnification, then such indemnification is permitted. *Sequa Coatings Corp. v. N. Ind. Commuter Transp. Dist.*, 796 N.E.2d 1216, 1229 (Ind. Ct. App. 2003) (noting that [']the plain language['] expressly stated, among other things, ['"]any and all Causes of Action, as defined above, asserted by any parties and non-parties to this Agreement['"]), *trans. denied*." *Id.* (other internal citations omitted.)

The court recognizes that the applicability of an indemnity clause to first party claims can be found, even without specific language

encompassing first party claims, when the context of the agreement makes it apparent such was the parties' intent. *See*, *Fackler v. Powell*, 891 N.E.2d 1091 (Ind. Ct. App. 2008) (indemnity and hold harmless provision specifically providing for recovery of attorney fees for breach of terms of dissolution decree). However, the court does not find the language of the subscription agreement to be such a clear case of the parties' intent to cover first party claims. Although counterclaimants may not have drafted the subscription agreement, they presented it to the plaintiff and counterclaimants clearly were the parties requiring execution of the agreement. As such, and construing the agreement strictly, the court finds any ambiguity in the agreement regarding whether it would apply to first party claims must be construed against the counterclaimants. *See*, *L.H.*, *supra*.

The court finds the subscription agreement, which document contained neither a specific provision for recovery of attorney fees nor clear language that it applied to first party claims, does not permit counterclaimants to recover their attorney fees and expenses incurred in defending the plaintiff's action or incurred in pursuing their counterclaim. Moreover, the court finds that defendants/counterclaimants have failed to prove that the attorney fees they incurred in defending the action and pursuing their counterclaim were caused by plaintiff's breach of section 2(b) of the subscription agreement.

The court denies the defendants' Motion for Revision of Summary Judgment Order Under Trial Rule 54 as to Attorney Fees, which motion was consolidated with defendants' Motion for Attorneys' Fees Under I.C. 34-52-1-1. The court further denies defendants' motion for Attorneys' Fees Under I.C. 34-52-1-1 with respect to all claims except plaintiff's claim for treble damages and attorney fees under I.C. 34-24-3-1.

Plaintiff argues the court's denial of defendants' motion for summary judgment on Count II precludes a finding that pursuit of the claim under the Crime Victims' Act was frivolous or groundless. However, neither the motion for summary judgment

on Count II nor the court's ruling on the motion addressed the specific claim for damages under I.C. 34-24-3 nor any defense that the misrepresentation had to be in writing. The court finds its order denying defendants' request for summary judgment on Count II does not preclude a finding that pursuit of the claim for damages under the Crime Victims' Act was groundless.

In her amended complaint, plaintiff asserted a claim for securities fraud, a claim for common law fraud, and a claim for breach of fiduciary duty. In Count II, her claim for common law fraud, plaintiff claimed she purchased her units in BioConvergence based on defendant Wright's intentional, false statement that the units were valued at $120 a unit by Blue and Company; that when defendant Wright made the representation, she knew the valuation was not prepared by Blue and Company and knew the units were not worth $120 a unit; and that plaintiff relied on the false statements when she purchased her units. In her prayer for damages for fraud, plaintiff sought compensatory damages, attorney fees, punitive damages "along with treble damages and attorneys' fees pursuant [to] Indiana Code Sec. 34-24-3 *et seq*." Indiana Code Sec. 34-24-3-1 *et seq*., commonly referred to as the Crime Victims' Relief Act, permits recovery of treble damages, costs and attorney fees when liability is established as a result of a violation of I.C. 35-43; I.C. 35-42-3-3; I.C. 35-42-3-4; or I.C. 35-45-9.4 [sic]. The only provision argued to be applicable in this case was criminal deception a violation of I.C. 35-43-5-3(a)(2).

Criminal deception under I.C. 35-43-5-3(a)(2) requires proof that a person knowingly or intentionally made a false or misleading *written* statement with intent to obtain property, employment, or an educational opportunity. Plaintiff consistently asserted that the alleged misrepresentation she relied on prior to purchasing her units was defendant Wright's *oral* representation that Blue & Co. prepared the $120 per unit valuation. Plaintiff never asserted she relied on a written statement of any kind. At trial, plaintiff did present evidence of written e-mails sent by [Alisa] to Greg Menefee. Plaintiff's Exhibit 60 was an e-mail sent by [Alisa] to

Greg Menefee on November 21, 2007 attaching a draft valuation of BioConvergence. The e-mail stated "Blue & Co is doing a review on it. Based on the discussion I had with Blue, the valuation is in the ballpark." Plaintiff's Exhibit 68 was an e-mail sent by Ms. Wright to Greg Menefee's e-mail address on December 19, 2007. The e-mail was addressed to both Greg Menefee and Julie Menefee. The e-mail welcomed Greg and Julie Menefee to the Bio[C]onvergence group, noted the plan was for the Menefees to become members in January 2008 and, among other items, stated, "Current valuation of the company confirmed by Blue & Co, BioC's accounting firm, in December 2007 at [$XXX][2]:, setting the new value per unit at $131.05." At trial, the representative from Blue & Co. testified the firm worked with Ms. Wright in reviewing certain figures and procedures related to the valuation, but did not perform a "review" or "valuation," or "confirm" defendant's valuation of BioConvergence LLC as those terms are used in the accounting profession.

Reliance is not an element of criminal deception, but it is for common law fraud. Neither of these e-mails was ever presented to or shared with Julie Menefee by Greg Menefee or otherwise. Neither of the e-mails state that Blue & Co valued the units at $120.00. Julie Menefee was not aware of these e-mails when she purchased the units in BioConvergence, LLC, and Julie Menefee did not directly rely on the written statements. However, Greg Menefee had seen the e-mails, one of which was addressed to Julie Menefee as well as Greg Menefee; the e-mails were sent within months of Plaintiff's purchase of the units and related to the Plaintiff's and Greg Menefee's decision to become owners in BioConvergence LLC; Greg Menefee did tell Julie Menefee that he thought the purchase of the units at $120.00 would be a good investment; and Greg Menefee testified that his opinion was

---

[2] Bracketed text appears in trial court's order.

based in part on his trust of Alisa Wright, but also on his trust of Blue & Co. Reasonable argument could be made that Julie Menefee relied in part on Greg Menefee's opinion of the investment.

The question for the court is not whether these emails do in fact constitute the "written statement" required for criminal deception, but whether an argument that they do is frivolous, unreasonable or groundless. It is a very close question for the court, but the court concludes it cannot say the claim was frivolous, unreasonable or groundless. Defendants' claim for attorney fees on this claim is denied as well.

Appellants' Appendix Volume 2 at 55-59.

## *Discussion*

[21] The issue is whether the trial court clearly erred or abused its discretion in denying the request of BioConvergence and Alisa for attorney fees. Generally, Indiana has consistently followed the American Rule in which both parties generally pay their own fees. *Loparex, LLC v. MPI Release Techs., LLC*, 964 N.E.2d 806, 815-816 (Ind. 2012). In the absence of statutory authority or an agreement between the parties to the contrary – or an equitable exception – a prevailing party has no right to recover attorney fees from the opposition.[3] *Id.* at 816. This case requires us to examine: (A) statutory authority; and (B) the Subscription Agreement.

---

[3] There are three well-established common-law exceptions to the American Rule: the "obdurate behavior" exception, the "common fund" exception, and the "private attorney general" exception. Indiana embraces the first two of these and not the third. *Loparex, LLC*, 964 N.E.2d at 816 n.5.

A.    *Statutory Authority*

The Indiana General Assembly and the Indiana Supreme Court "have given the courts of this state tools to deal with abusive litigation practices." *Zavodnik v. Harper*, 17 N.E.3d 259, 264 (Ind. 2014). Ind. Code § 34-52-1-1 is titled "General recovery rule" and provides in part:

> (b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> > (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
> >
> > (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
> >
> > (3) litigated the action in bad faith.

In discussing a prior version of the statute, the Indiana Supreme Court stated that the statute "strikes a balance between respect for an attorney's duty of zealous advocacy and 'the important policy of discouraging unnecessary and unwarranted litigation.'"[4] *Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind. 1998)

---

[4] The Court was examining Ind. Code § 34-1-32-1, which similarly provided:

> (b)    In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party:
>
> > (1)    brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
> >
> > (2)    continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
> >
> > (3)    litigated the action in bad faith.

(quoting *Kahn v. Cundiff*, 533 N.E.2d 164, 170 (Ind. Ct. App. 1989)).
"Subsections (b)(1) and (b)(2) of the statute focus on the legal and factual basis of the claim or defense and the arguments supporting the claim or defense." *Id.* "In contrast, subsection (b)(3) – 'litigated the action in bad faith' – by its terms requires scrutiny of the motive or purpose of the non-prevailing party." *Id.* The Indiana Supreme Court has held:

> More precisely,
>
>> bad faith is not simply bad judgment or negligence. Rather, it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

*Id.* (quoting *Watson v. Thibodeau*, 559 N.E.2d 1205, 1211 (Ind. Ct. App. 1990) (quoting *Young v. Williamson*, 497 N.E.2d 612, 617 (Ind. Ct. App. 1986), *reh'g denied*, *trans. denied*)). The Court also explained:

> This Court has observed in related contexts that the legal process "must invite, not inhibit, the presentation of new and creative argument" to enable the law to grow and evolve. *Orr v. Turco Mfg. Co.*, 512 N.E.2d 151, 153 (Ind. 1987) (setting forth standard for punitive sanctions for frivolous appellate claims). To be sure, application of the statutory authorization for recovery of attorney's fees . . . must leave breathing room for zealous advocacy and access to the courts to vindicate rights. *Kahn*, 533 N.E.2d at 170. Courts must be sensitive to these considerations and view claims of "frivolous, unreasonable, or groundless" claims or defenses with suspicion.

*Id.* at 925.

[24] Ind. Code § 34-52-1-1(b) "places an obligation on litigants to investigate the legal and factual basis of the claim when filing and to continuously evaluate the merits of claims and defenses asserted throughout litigation." *Landmark Legacy, LP v. Runkle*, 81 N.E.3d 1107, 1116-1117 (Ind. Ct. App. 2017) (quoting *Gen. Collections, Inc. v. Decker*, 545 N.E.2d 18, 20 (Ind. Ct. App. 1989)). "A claim is 'frivolous' if it is made primarily to harass or maliciously injure another; if counsel is unable to make a good faith and rational argument on the merits of the action; or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law." *Kitchell v. Franklin*, 26 N.E.3d 1050, 1057 (Ind. Ct. App. 2015) (citing *Wagler v. W. Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 383 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*, *cert. denied*, 134 S. Ct. 952 (2014)), *trans. denied*. "A claim is 'unreasonable' if, based on the totality of the circumstances, including the law and facts known at the time, no reasonable attorney would consider the claim justified or worthy of litigation." *Id.* "A claim is groundless if no facts exist which support the legal claim relied on and presented by the losing party." *Purcell v. Old Nat. Bank*, 972 N.E.2d 835, 843 (Ind. 2012). "However, the law is settled that a claim is neither groundless nor frivolous merely because a party loses on the merits." *Kitchell*, 26 N.E.3d at 1057. "Bad faith is demonstrated where the party presenting the claim is affirmatively operating with furtive design or ill will." *Id.*

[25] "The trial court's decision to award attorney's fees under § 34-52-1-1 is subject to a multi-level review: the trial court's findings of facts are reviewed under the clearly erroneous standard and legal conclusions regarding whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed de novo." *Purcell*, 972 N.E.2d at 843 (citing *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 457 (Ind. 2012)). "[T]he trial court's decision to award attorney's fees and any amount thereof is reviewed for an abuse of discretion." *Id.* "A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law." *Id.*

[26] BioConvergence and Alisa appear to argue that: (1) Julie's claims were frivolous because she abandoned most claims on summary judgment; (2) Julie's claim of excessive payments by BioConvergence was not recoverable because such claim belonged to BioConvergence; (3) Julie's claim related to criminal deception was frivolous because there was no written statement; and (4) Julie's fraud and securities fraud claims were frivolous.

### 1. *Julie's Allegations*

[27] BioConvergence and Alisa assert that Julie abandoned fourteen claims under Count III after litigating them for three years and after Alisa designated evidence on summary judgment proving that the factual and legal bases were lacking.

[28] Julie argues that BioConvergence and Alisa contend that she asserted fifteen claims for breach of fiduciary duty and that the trial court entered summary judgment against her on fourteen out of those fifteen claims, but that their contention is false. She asserts that she alleged one claim for breach of fiduciary duty against Alisa in Count III of the amended complaint. She claims that BioConvergence and Alisa attempt to characterize that one claim as fifteen separate claims by citing her answer to an interrogatory and her deposition testimony about the interrogatory answer. She asserts that responses to interrogatories are not claims and that, "[w]ere the Court to decide that all statements in answers to interrogatories that a party did not pursue at trial were 'frivolous claims,' parties would be discouraged from 'fully' responding to interrogatories." Appellee's Brief at 15. She asserts that such a result would lead to violations of Ind. Trial Rules 26[5] and 33[6] and frustrate the discovery process. She contends that, when she was asked to list the grounds upon which she claimed a breach of fiduciary duty, she responded with all facts that she believed could possibly support her claim. With respect to whether she abandoned that claim, Julie argues that she filed an amended complaint sufficient to place BioConvergence and Alisa on notice of her claims and later determined that the best course was to pursue a claim against Alisa in her

---

[5] Ind. Trial Rule 26 governs the scope of discovery and provides in part that "[p]arties may obtain discovery regarding *any* matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party . . . ." (Emphasis added).

[6] Ind. Trial Rule 33 provides in part: "Each interrogatory shall be answered separately and fully . . . ."

capacity as an officer and accordingly did not oppose Alisa's request to enter summary judgment with respect to Alisa's role as a member.

[29] To the extent Julie abandoned assertions made in her discovery response, we cannot say that such abandonment indicates that her claims were frivolous or that she continued to litigate the action after her claim clearly became frivolous, unreasonable, or groundless. We observe that, with respect to some of the examples addressed in the brief of BioConvergence and Alisa, they do not cite to the record for the argument that Julie abandoned claims. We also observe that BioConvergence and Alisa do not respond to Julie's argument that limiting her discovery responses would have violated Ind. Trial Rules 26 and 33.

[30] With respect to their assertion that the trial court's April 6, 2016 order found that Alisa owed no fiduciary duty to Julie prior to her membership, BioConvergence and Alisa argue, without citation to the record, that Julie "continued to assert such claim in Count III, thereby, forcing Alisa to continue to defend a claim the trial court had already rejected." Appellants' Brief at 24. A review of the record reveals that Julie's December 21, 2016 response in opposition to Alisa's motion for summary judgment on Count III stated in part that "Alisa Wright made misrepresentations regarding who valued BioConvergence's units *after* Julie became a member of BioConvergence." Appellants' Appendix Volume 2 at 222 (emphasis added).

[31] The record suggests at least some evidence with respect to other allegations. With respect to manipulating financials, BioConvergence and Alisa cite to

Julie's August 25, 2016 deposition and assert that she admitted she had no knowledge that any BioConvergence financial document was manipulated and that no person advised her that Alisa manipulated any BioConvergence financial document. The portion of Julie's deposition cited by BioConvergence and Alisa reveals an exchange in which Julie mentions a 2011 tape on which Alisa and others discussed "maybe altering the rents or doing something to make [BioConvergence] more profitable so they could get a line of credit." *Id.* at 137. She also mentioned that the "rents were certainly fluctuating," that the "fluctuation of the rents would make [BioConvergence] appear more profitable," and that "[w]hen the rents fluctuated, that's a manipulation of the financials . . . ." *Id.*

[32] As for Alisa's alleged failure to be at BioConvergence's offices, BioConvergence and Alisa argue that Julie admitted she had no personal knowledge of Alisa's alleged failure to be present, claimed no specific damage relating to Alisa's failure to be at BioConvergence's offices, designated no evidence or argument, and abandoned this claim. The portion of Julie's deposition cited by BioConvergence and Alisa reveals that, when asked about Alisa's failure to be present, Julie mentioned "conversations with former employees saying she wasn't there a lot of the time." *Id.* at 140. She testified that, while she did not have personal knowledge that Alisa failed to be present at the offices, she would rely on the testimony of "Kathy Eddy. Could be Lance. And I know Janet and Kelly. Kelly Zaleski, Janet Carminati." *Id.*

[33] Based upon our review of the record, we cannot say that BioConvergence and Alisa have demonstrated that there are no facts that support Julie's allegations or that reversal is warranted. *See Purcell*, 972 N.E.2d at 843 ("Although the facts presented at trial were insufficient to survive judgment on the evidence, it remains true that *some* facts were presented in Purcell's case-in-chief. As discussed above, it is likely that Purcell satisfied the quantitative aspect of the sufficiency analysis by presenting facts that potentially lend support to his conclusion. Thus, it cannot be said that '*no facts*' existed in support of his legal claim at the time Purcell went to trial. Based on this conclusion and on the strong deference afforded to the trial court in these matters, we hold that the trial court did not abuse its discretion in denying Old National's request for costs and attorney's fees.").

2. *Claim of Excessive Payments as a Derivative Claim*

[34] BioConvergence and Alisa argue that Julie's claimed damages of excessive payments were never recoverable because the claim belonged to BioConvergence as a derivative suit. They point to the trial court's findings in its January 12, 2016 order that summary judgment was not appropriate based on the claim being a derivative rather than a direct action because "at this summary judgment stage, [Alisa] has failed to establish the inapplicability of the exception created in *Barth v. Barth*, 659 N.E.2d 559 (Ind. 1995) allowing a member of a limited liability company to pursue a direct action for harm to the company under certain circumstances." Appellants' Appendix Volume 2 at 53. BioConvergence and Alisa argue that this finding is clearly erroneous because

"Alisa designated evidence of [Julie's] repeated admission that she did not assert a derivative claim but asserted only an individual claim for damages." Appellants' Brief at 33 (citing Appellants' Appendix Volume 2 at 68, 73, 240).[7] They cite *Purcell v. Southern Hills Investments, LLC*, 847 N.E.2d 991 (Ind. Ct. App. 2006), for the idea that a court in such a case does not consider the *Barth* exception.

[35] Julie alleges that owners of closely-held companies are not always required to bring claims of harm to the company as derivative actions. She argues that it would have been futile to require her to make a demand on BioConvergence or to attempt to convince BioConvergence to assert claims against Alisa because Alisa was the sole director of BioConvergence at the time of the events alleged in the lawsuit and when she filed the lawsuit.

[36] In *Barth*, the Indiana Supreme Court stated:

> While we affirm the general rule requiring a shareholder to bring a derivative rather than direct action when seeking redress for injury to the corporation, we nevertheless observe two reasons why this rule will not always apply in the case of closely-held corporations. First, shareholders in a close corporation stand in a fiduciary relationship to each other, and as such, must deal fairly, honestly, and openly with the corporation and with their fellow

---

[7] To the extent BioConvergence and Alisa assert Julie admitted that she did not assert a derivative claim, we observe that Julie alleged in her August 2013 complaint that Alisa, as a majority shareholder, owed fiduciary duties to her, a minority shareholder, and that she was damaged by Alisa's breach of her fiduciary duties. Julie's amended complaint again alleged that she was damaged by Alisa's breach of her fiduciary duties. In her response in opposition to Alisa's motion for summary judgment on Count III of her amended complaint, Julie stated that she "properly asserted her claims in a direct action." Appellants' Appendix Volume 2 at 240.

shareholders. *W & W Equipment Co.,*[ *Inc. v. Mink,*] 568 N.E.2d [564, 570 (Ind. Ct. App. 1991), *reh'g denied*, *trans. denied*]; *Krukemeier v. Krukemeier Machine and Tool Co., Inc.* (1990), Ind. App., 551 N.E.2d 885; *Garbe v. Excel Mold, Inc.* (1979), Ind. App., 397 N.E.2d 296. Second, shareholder litigation in the closely-held corporation context will often not implicate the policies that mandate requiring derivative litigation when more widely-held corporations are involved. *W & W Equipment Co., Inc. v. Mink* is a leading case in this regard. There our Court of Appeals was faced with a lawsuit filed by one of two 50% shareholders of a corporation after the other shareholder joined with nonshareholder directors to fire the plaintiff shareholder and arrange for the payment of certain corporate assets to the other shareholder. The court concluded that no useful purpose would be served by forcing the plaintiff to proceed derivatively where the policies favoring derivative actions were not implicated— direct corporate recovery was not necessary to protect absent shareholders or creditors as none existed. *Id.*, 568 N.E.2d at 571.

Because shareholders of closely-held corporations have very direct obligations to one another and because shareholder litigation in the closely-held corporation context will often not implicate the principles which gave rise to the rule requiring derivative litigation, courts in many cases are permitting direct suits by shareholders of closely-held corporations where the complaint is one that in a public corporation would have to be brought as a derivative action. *See* F. Hodge O'Neal & Robert B. Thompson, *O'Neal's Close Corporations* § 8.16 n. 32 (3d ed. & 1995 Cum. Supp.) (collecting cases); American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* § 7.01, reporter's n. 4 (1994) (collecting cases). However, it is important to keep in mind that the principles which gave rise to the rule requiring derivative actions will sometimes be present even in litigation involving closely-held corporations. For example, because a corporate recovery in a derivative action will benefit creditors while a direct recovery by a shareholder will not,

the protection of creditors principle could well be implicated in a shareholder suit against a closely-held corporation with debt.

* * * * *

In its recently-completed corporate governance project, the American Law Institute proposed the following rule for determining when a shareholder of a closely-held corporation may proceed by direct or derivative action:

> In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

A.L.I., *Principles of Corporate Governance* § 7.01(d). We have studied this rule and find that it is consistent with the approach taken by our Court of Appeals and by most other jurisdictions in similar cases and that it represents a fair and workable approach for balancing the relative interests in closely-held corporation shareholder litigation.

In determining that a trial court has discretion to decide whether a plaintiff must proceed by direct or by derivative action, we make the following observations, drawn largely from the Comment to § 7.01(d). First, permitting such litigation to proceed as a direct action will exempt the plaintiff from the requirements of Ind. Code § 23-1-32-1 *et seq.*, including the provisions that permit a special committee of the board of directors to recommend dismissal of the lawsuit. Ind. Code § 23-1-32-4. As such, the court in making its decision should consider whether the corporation has a disinterested board that should be

permitted to consider the lawsuit's impact on the corporation. A.L.I., *Corporate Governance Project* § 7.01 comment e. Second, in some situations it may actually be to the benefit of the corporation to permit the plaintiff to proceed by direct action. This will permit the defendant to file a counterclaim against the plaintiff, whereas counterclaims are generally prohibited in derivative actions. Also, in a direct action each side will normally be responsible for its own legal expenses; the plaintiff, even if successful, cannot ordinarily look to the corporation for attorney's fees. *Id.*

659 N.E.2d at 561-563 (footnotes omitted).

[37] In *Purcell*, which is cited by BioConvergence and Alisa, the Court discussed *Barth* and commented that the Indiana Supreme Court "acknowledged that the distinction between direct and derivative claims has been complicated in recent years by recognition in many jurisdictions, including Indiana, of direct actions by shareholders in closely-held corporations for derivative claims." *Purcell*, 847 N.E.2d at 1001 (footnote omitted). In part, the court held that "insofar as [the plaintiff] relies on the claim that [the defendant] violated his fiduciary duties to [the plaintiff] as a Member of [a limited liability company], this is properly asserted in a direct action because it is based upon rights and duties owed to [the plaintiff], not [the limited liability company]." *Id.* The Court also stated that "[b]ecause [the plaintiff was] asserting a direct claim addressing a harm in its own name and not a derivative claim of corporate harm in the name of [a limited liability company] under the guise of a direct claim, we do not need to investigate whether the *Barth* exception is applicable." *Id.*

[38] Based upon the record, including that Alisa has been the majority member of BioConvergence, we cannot conclude that the trial court abused its discretion by declining to find that Julie's claim regarding excessive payments was frivolous based on the idea that she may have been required to file a derivative claim and award attorney fees on that basis.

### 3. *Criminal Deception*

[39] BioConvergence and Alisa argue that Julie sought damages under the Crime Victims Relief Act ("CVRA") for criminal deception and assert that criminal deception requires a written statement and yet the trial court found no written statement that Julie relied upon, no written statement of which Julie was made aware, and no written statement that any person communicated to her. They assert that the Menefees each admitted that the only alleged representation relied upon was oral. BioConvergence and Alisa assert that this Court should reject the trial court's reasoning that a plaintiff can reasonably assert a treble damages claim for criminal deception based on a written statement known only to a third party and which is not communicated to the plaintiff.

[40] Julie asserts that she presented evidence that Alisa engaged in criminal deception. She argues that even if she did not rely directly upon the emails Alisa sent to Greg, she could still maintain a claim for damages based on those emails. In their reply brief, BioConvergence and Alisa argue that Julie confuses reliance for a criminal conviction with causation for a civil CVRA claim when

she argues that her civil CVRA claim cannot be frivolous because there is no proof of reliance required for a criminal deception conviction.

[41] Ind. Code § 34-24-3-1 is referred to as the CVRA and is titled "Pecuniary loss as result of property offenses" and provides in part:

> If a person has an unpaid claim on a liability that is covered by IC 24-4.6-5 or suffers a pecuniary loss as a result of a violation of IC 35-43, IC 35-42-3-3, IC 35-42-3-4, or IC 35-45-9, the person may bring a civil action against the person who caused the loss for the following:
>
> > (1) An amount not to exceed three (3) times:
> >
> > > (A) the actual damages of the person suffering the loss, in the case of a liability that is not covered by IC 24-4.6-5; or
> > >
> > > (B) the total pump price of the motor fuel received, in the case of a liability that is covered by IC 24-4.6-5.
> >
> > (2) The costs of the action.
> >
> > (3) A reasonable attorney's fee.

[42] Ind. Code § 35-43-5-3 governs criminal deception and provides in part that "[a] person who . . . knowingly or intentionally makes a false or misleading written statement with intent to obtain property, employment, or an educational opportunity . . . commits deception . . . ." The record reveals that Alisa sent Greg, Julie's husband, an email message on November 21, 2007, referencing a "draft valuation" and stating that "[b]ased on the discussion [Alisa] had with Blue, the valuation is in the ballpark." Plaintiff's Exhibit 60. Alisa sent another

email message to Greg, which was addressed to "Greg and Julie" and provided a valuation for the company "confirmed" by Blue & Co. Plaintiff's Exhibit 68.

[43] The trial court's order states:

> The question for the court is not whether these emails do in fact constitute the "written statement" required for criminal deception, but whether an argument that they do is frivolous, unreasonable or groundless. It is a very close question for the court, but the court concludes it cannot say the claim was frivolous, unreasonable or groundless.

Appellants' Appendix Volume 2 at 59. We cannot say that the trial court erred in concluding that Julie's claim was not frivolous.

### 4. *Fraud Claims*

[44] BioConvergence and Alisa argue that Julie's fraud and securities fraud claims were based on the same alleged oral representation by Alisa that BioConvergence's accounting firm "prepared" the valuation. Appellants' Brief at 39. They assert that Julie knew when she filed her complaint that the alleged oral representation that Blue & Company prepared the valuation was a false allegation. Julie responds that she presented evidence that Alisa committed securities fraud and fraud.

[45] Julie's amended complaint cites Ind. Code § 23-19-5-1 under Count I, securities fraud. That statute provides:

It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:

> (1) to employ a device, scheme, or artifice to defraud;
>
> (2) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

Ind. Code § 23-19-5-1.

[46] The record reveals that Alisa sent Greg an email message on November 21, 2007, which stated in part: "As you and Lance are meeting later this morning, you'll want to take a look at this when you talk. This is a draft valuation and Blue & Co is doing a review on it. Based on the discussion I had with Blue, the valuation is in the ballpark." Plaintiff's Exhibit 60. Alisa's December 19, 2007 email addressed to "Greg and Julie" stated in part: "Current valuation of the company confirmed by Blue & Co, BioC's accounting firm, in December 2007 at $9,267,841 – setting the new value per unit at $131.05." Plaintiff's Exhibit 68.

[47] The record further reveals a deposition of Brooks, which states in part that he saw the November 21, 2007 email and that he did not believe that a review had been done. Eddy testified that it had become fairly apparent that Blue & Company had not done a certain valuation, Alisa asked her to look at the valuation as the CFO of BioConvergence in October 2011, she found "there

were a lot of problems," she went through the records to try to figure out where some of the numbers came from to try to justify the $140 value per unit "Alisa had claimed for the previous valuation because she had said that had come from Blue and Company," but "[i]t was clear that it had not come from Blue and Company." Transcript Volume 5 at 131-132. We cannot say that the trial court's conclusion that Julie's claim was not frivolous is erroneous or that it abused its discretion.

### B.    *Subscription Agreement*

[48]    BioConvergence and Alisa assert that the trial court erred in holding that the Subscription Agreement did not allow indemnification for first party claims and that they did not prove that the attorney fees were caused by Julie's breach. They argue that each party had first party indemnification relief against the other in the event of a breach. They assert that the attorney fees sought relate to the defense of Julie's lawsuit and are recoverable for Julie's breach under the indemnification provision, and that recovery of attorney fees is allowed regardless of whether the indemnity provision references attorney fees. They acknowledge that "Indiana law is unsettled with respect to the recovery of attorney fees in enforcing an indemnity provision which lacks specific attorney fee language." Appellants' Brief at 46.

[49]    BioConvergence and Alisa argue that this Court should hold that the indemnification provision applies to first party claims and allows for BioConvergence's recovery of attorney fees in defending against Julie's claims

and enforcing the indemnity provision. They assert that BioConvergence was damaged by Julie's breach, and that BioConvergence could not have sold units to Julie in a private placement without her representation that she had the business acumen to evaluate the investment. They claim that "[b]ut for [Julie's] representation, she would not have become a [BioConvergence] investor and would not have had an opportunity to file suit against [BioConvergence and Alisa] relating to her [BioConvergence] investment." *Id.* at 48. They conclude that the trial court clearly erred in holding that they failed to prove that their attorney fees were caused by Julie's breach of the Subscription Agreement.

[50] Julie argues that the Subscription Agreement does not provide a basis for awarding attorney fees. She asserts that the indemnity agreement does not apply to first party claims. She argues that "[n]owhere does section 5(a), or any other provision of the Agreement, state that [Julie] shall pay attorneys' fees incurred by [BioConvergence] or Alisa if [Julie] breaches the Agreement." Appellee's Brief at 27. She states that Indiana follows the general rule that each party must pay his or her own attorney fees. She also asserts that indemnification clauses are strictly construed and the terms are required to be clear and unequivocal.

[51] The court found that the Subscription Agreement, which "contained neither a specific provision for recovery of attorney fees nor clear language that it applied to first party claims, does not permit [BioConvergence and Alisa] to recover their attorney fees and expenses incurred in defending the plaintiff's action or incurred in pursuing their counterclaim." Appellants' Appendix Volume 2 at

57.  The court also found that BioConvergence and Alisa "failed to prove that the attorney fees they incurred in defending the action and pursuing their counterclaim were caused by plaintiff's breach of section 2(b) of the subscription agreement." *Id.*

[52]  "[I]ndemnification clauses are strictly construed and the intent to indemnify must be stated in clear and unequivocal terms." *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132 (Ind. 1995).  Indemnity agreements are subject to the standard rules and principles of contract construction.  *Flaherty & Collins, Inc. v. BBR-Vision I, L.P.*, 990 N.E.2d 958, 967 (Ind. Ct. App. 2013) (citing *L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974 N.E.2d 1031, 1047 (Ind. Ct. App. 2012)), *trans. denied*.  Interpretation of a written contract, including an indemnity provision, is a question of law.  *Id.*  We review questions of law *de novo* and owe no deference to the trial court's legal conclusions.  *Id.*

[53]  "The general legal understanding of indemnity clauses is that they cover '"the risk of harm sustained by *third persons* that might be caused by either the indemnitor or the indemnitee.  It shifts the financial burden for the ultimate payment of damages from the indemnitee to the indemnitor."'"  *Id.* (quoting *L.H.*, 974 N.E.2d at 1047 (quoting *Indianapolis City Market Corp. v. MAV, Inc.*, 915 N.E.2d 1013, 1023 (Ind. Ct. App. 2009))).  The court in *Flaherty* stated:

> As we noted in *L.H.*, other authorities recognize this general understanding.  974 N.E.2d at 1047-48 (citing Am. Jur. 2d 415, Indemnity § 1 (2005) ("In general, indemnity is a form of compensation in which a first party is liable to pay a second party for a loss or damage the second party incurs to a third party");

C.J.S. 94, Indemnity § 1 (2007) ("In a contract of indemnity, the indemnitor, for a consideration, promises to indemnify and save harmless indemnitee against liability of indemnitee to a third person or against loss resulting from such liability")).

*Id.* "There is no absolute prohibition against one party agreeing to indemnify the other party for first-party claims arising between those parties." *Id.* "Where the plain language of the provision requires first-party indemnification, then such indemnification is permitted." *Id.* (citing *Sequa Coatings Corp. v. N. Ind. Commuter Transp. Dist.*, 796 N.E.2d 1216, 1229 (Ind. Ct. App. 2003) (noting that "the plain language" expressly stated, among other things, "'any and all Causes of Action, as defined above, asserted by any parties and nonparties to this Agreement'"), *clarified on reh'g*, 800 N.E.2d 926, *trans. denied*). *See also L.H. Controls, Inc.*, 974 N.E.2d at 1048 (discussing *Fackler v. Powell*, 891 N.E.2d 1091 (Ind. Ct. App. 2008), *trans. denied*, observing that *Fackler* held that a husband was required to pay his ex-wife's attorney fees after his breach of a dissolution property settlement agreement, which stated that each party agreed "to indemnify and save and hold the other harmless from all . . . expenses (including attorney's fees) . . . incurred by reason of the indemnitor's violation or breach of any of the terms and conditions hereof," *Fackler*, 891 N.E.2d at 1098, stating that "[i]t is clear that a divorce decree indemnity provision such as the one in *Fackler* would cover a first-party indemnity claim, i.e. where one party successfully sues the other for breach of contract and requests attorney fees," and concluding, "[h]ere, by contrast, the [agreement] does not mention first-party claims.").

[54] In *Zebrowski & Assocs., Inc. v. City of Indianapolis, By & Through its Bd. of Directors for Utilities of its Dep't of Pub. Utilities*, which is cited by BioConvergence and Alisa, the Court held: "An indemnitee, who incurs legal expenses through defending an action against him for which he is entitled to indemnification, is entitled to recover the expense of creating his defense, including reasonable attorney fees." 457 N.E.2d 259, 264 (Ind. Ct. App. 1983) (citing *Employers' Liability Assurance Corp. v. Citizens Nat'l Bank of Peru*, 85 Ind. App. 169, 151 N.E. 396 (1926)). The Court held that "[t]he indemnitee may recover attorney fees from the indemnitor incurred through an original action which is settled, and also for the cost of prosecuting the indemnity clause." *Id.* (citing *Price v. Amoco Oil Co.*, 524 F.Supp. 364 (S.D. Ind. 1981)). The Court also observed: "In the present case, a specific provision for attorney fees is included in the indemnity clause, and only recovery of fees concerning the original suit was requested." *Id.*

[55] In *Dale Bland Trucking, Inc. v. Kiger*, the Court commented on *Zebrowski* as follows:

> Bland argues that *Zebrowski & Associates, Inc. v. City of Indianapolis* (1983), Ind. App., 457 N.E.2d 259, 264, supports its contention that an indemnitee may recover attorney's fees from the indemnitor incurred in prosecuting the indemnity clause. The *Zebrowski* court made such statement in dicta when citing a federal case and did not apply the language to the case. *Id.* Instead, the court stated that the indemnity clause for attorney's fees referred to recovery of fees concerning the original lawsuit and not of the indemnity action. *Id.* Therefore, *Zebrowski* does not support Bland's contention.

598 N.E.2d 1103, 1105 (Ind. Ct. App. 1992) (footnote omitted), *trans. denied*. The Court stated: "We note that the federal case cited in *Zebrowski* was *Price v. Amoco Oil Co.* (S.D. Ind. 1981), 524 F.Supp. 364. The *Price* court permitted an award of attorney's fees incurred in prosecuting the indemnity agreement because the lease contained very specific language providing for such recovery." *Dale Bland Trucking, Inc.*, 598 N.E.2d at 1105. The Court also rejected Bland's argument that the language "from any and all . . . suits, losses" included attorney fees incurred in the prosecution of the indemnity action. *Id.* at 1106. The Court held:

> The indemnity clause in *Zebrowski* provided, "Contractor shall defend, indemnify and hold harmless the Utility . . . from and against all claims, damages, losses and expenses, including attorney fees . . . ." *Zebrowski*, 457 N.E.2d at 262. The court determined that the clause referred only to attorney's fees incurred in the underlying tort actions, and not the prosecution of the indemnity clause. *Id.* at 264. Likewise, the indemnity clause in the case at bar does not refer to the recovery of attorney's fees in the indemnity action. The trial court was correct in denying an award for attorney's fees incurred in the present litigation.

*Id.*

[56] We find the reasoning in *Dale Bland Trucking* instructive. Here, the indemnity provision did not explicitly permit an award of attorney fees nor refer to the recovery of attorney fees in an indemnity action. Accordingly, we cannot say that reversal is warranted.

## *Conclusion*

[57]    For the foregoing reasons, we affirm the trial court's denial of attorney fees.

[58]    Affirmed.

Baker, J., and Riley, J., concur.