

FILED

Dec 20 2018, 5:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Frank J. Deveau
Donald C. Biggs
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

David L. Taylor
Misti Presnell DeVore
Audrey L. Smith
Taylor DeVore P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| City of Gary, Indiana and Gary/Chicago International Airport Authority, <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Auto-Owners Insurance Company, <br><br> *Appellee-Garnishee Defendant and Counterclaimant* | December 20, 2018 <br><br> Court of Appeals Case No. 18A-CT-68 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Calvin D. Hawkins, Judge <br><br> Trial Court Cause No. 45D02-0405-CT-59 |

**Vaidik, Chief Judge.**

## Case Summary

The City of Gary ("the City") and the Gary/Chicago International Airport Authority ("the Airport"), plaintiffs in this case relating to environmental

contamination in an area near the airport, appeal the trial court's summary-judgment rulings in favor of Auto-Owners Insurance Company, a liability insurer for one of the defendants in the case. Because the City's complaint did not allege facts that might have fallen within the coverage provided by Auto-Owners, Auto-Owners had no duty to defend, and therefore no duty to indemnify, its insured. In addition, Auto-Owners designated sufficient evidence to make a prima facie showing negating the Airport's contamination claim, and the Airport failed to respond with evidence establishing a genuine issue of material fact. We therefore affirm the judgment of the trial court in all respects.[1]

## Facts and Procedural History

[2] Since the 1970s, the Coulopoulos family has operated a variety of businesses at the southwest corner of the intersection of Chicago Avenue and Industrial Highway/Airport Road in Gary, just north of the Gary/Chicago International Airport. The address of the property is 6901 Chicago Avenue (sometimes referred to as 6901 West Chicago Avenue). One such business was a car-crushing operation that was called Western Scrap from 1976 until 2002, when the name was changed to Summit Inc. Peter Coulas was in charge of that

---

[1] We held oral argument in this matter on November 19, 2018, in the Indiana Supreme Court Courtroom. We thank counsel for their presentations.

operation. (Coulas's actual name is Peter Coulopoulos, but he now goes by "Coulas" and "Coules." We will use "Coulas," as the trial court did.)

[3] In the mid-1990s, Coulas started a business called Recycle West with another man named Jim Wuolukka. Recycle West, which went out of business in 1996 or 1997, collected and baled paper for shipment to recyclers. There is conflicting evidence about where exactly Recycle West's operations took place. According to Coulas, it was at 6901 Chicago Avenue, in a building "[r]ight behind" Western Scrap's office building. Appellants' App. Vol. IV p. 134. Wuolukka, on the other hand, has said that it was in a building "on the north side of Chicago Ave," i.e., across Chicago Avenue from Western Scrap. Appellee's App. Vol. IV pp. 143-44.

[4] In March 2003, the Indiana Department of Environmental Management (IDEM) sent a "Notice of Violation" to Coulas, alleging that a petroleum spill had occurred at Western Scrap in September 2002 and recommending settlement discussions. Appellee's App. Vol. II pp. 146-48. The parties do not tell us how that IDEM matter was resolved, but in May 2004, the City filed suit against Coulas and Western Scrap Corporation in Lake County Superior Court. The City alleged that "Western Scrap has, at all relevant times, operated the property located at 6901 W. Chicago, Gary, Indiana ('the Property') as a scrap yard and for other purposes." Appellants' App. Vol. II p. 44. The City further claimed that Coulas, "at all relevant times, has been in charge of the operations of Western Scrap on the Property." *Id.* at 45. The City alleged that the "Defendants' decades of operations on the Property" caused the property and

its surroundings to be contaminated with "hazardous substances and petroleum." *Id.* at 45-46. The complaint asserted claims of public and private nuisance and an Environmental Legal Action under Indiana Code section 13-30-9-2. In March 2005, the City filed an amended complaint that added Constance Coulopoulos (Coulas's aunt) and Lake County Trust Company as defendants, alleging that they were the owners of the Western Scrap property.

[5] Neither the City's original complaint nor its amended complaint made any mention of Recycle West. Nonetheless, in December 2006—thirty-one months after the original complaint was filed—Coulas sent notice of the lawsuit to Auto-Owners, which in 1995 and 1996 had issued commercial general liability insurance policies for Recycle West's operations. The 1995 policy insured "PETER COULES & JIM WUOLUKKU DBA RECYCLE WEST," and the 1996 policy insured "PETER COULES DBA RECYCLE WEST." Appellants' App. Vol. III pp. 29-30, 75-76. Both policies had a "General Aggregate Limit" of $2,000,000 and listed the "BUSINESS DESCRIPTION" as "Pick-Up Recycle Prod" and the "LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY" as "6901 Chicago Ave" in Gary. *Id.* Coulas's December 2006 notice to Auto-Owners stated that "[i]t appears that during the time frame alleged in the Complaint, the property located at 6901 Chicago Avenue, Gary, Indiana, was covered" under the two policies. Appellants' App. Vol. IV p. 126. Coulas requested "a position statement from Auto-Owners as to the coverage under this policy." *Id.*

[6]     In July 2007, Auto-Owners sent Coulas's attorney a letter stating that the City's complaint did not appear to involve "our insured as an individual with respect to the conduct of a business of which he is the sole owner" or "the insured, in his capacity as officer or director of Recycle West." *Id.* at 151. Rather, Auto-Owners said, the complaint involved "Peter Coules and Western Scrap." *Id.* Auto-Owners wrote that, as a result, it "will not pay for a defense of the Complaint[.]" *Id.* Within two weeks of this denial, Coulas and the City reached a settlement under which Coulas agreed to pay $200,000 a year for ten years to fund the cleanup of the contamination. The trial court then entered a judgment incorporating the parties' settlement ("Consent Judgment"). (The parties do not tell us whether Western Scrap was insured or, if so, whether Coulas tendered the City's lawsuit to the insurer(s).)

[7]     More than seven years later, in November 2014, the City re-opened the case by filing a motion for a proceeding supplemental against Coulas under Indiana Trial Rule 69(E), claiming that he had failed to comply with the Consent Judgment. After a few months, the City filed a second such motion, this time naming Auto-Owners and two other insurance companies as garnishee defendants and alleging that Auto-Owners was obligated to Coulas under the two Recycle West policies.

[8]     The City's proceeding supplemental against Coulas and Auto-Owners was still pending when, in April 2015, the Airport filed a motion to intervene in the case. The Airport alleged that contamination from 6901 Chicago Avenue had migrated onto the Airport's property and asked for permission to file its own

complaint for damages against Coulas and Summit Inc.  The trial court granted the Airport's motion in May 2015.  The Airport's complaint, like the City's complaint, made no mention of Recycle West.

[9]     In February 2016, Auto-Owners filed its own claims against the City, the Airport, Coulas, and Recycle West, seeking a declaratory judgment that it did not owe and does not owe a duty to defend or a duty to indemnify with regard to any of the claims made by the City or the Airport.  Auto-Owners alleged, among other things, that no allegation had been made "against Recycle West or that Recycle West's business activities in any way contributed to the contamination" and that "[t]here is no coverage under the Policies due to untimely notice."  Appellee's App. Vol. II pp. 24, 37; Appellee's App. Vol. III pp. 12, 27.

[10]    Shortly after Auto-Owners filed its claims, the Airport amended its own complaint to include allegations implicating Recycle West.  Specifically, the Airport alleged that "Western Scrap, Summit **and Recycle West** are each alter egos of Coulas" and that "Coulas released hazardous substances at the Site throughout the 1990's and later while doing business as an individual and as Summit, Western Scrap **and/or Recycle West**."  Appellants' App. Vol. IV pp. 7, 9 (emphasis added).  Coulas then asked Auto-Owners to defend him against the Airport's claims, and Auto-Owners agreed to do so under a reservation of rights.

[11]     In June 2016, the City (along with Coulas and the Airport) filed a motion for partial summary judgment. The City asked the trial court to rule that Auto-Owners had a duty to defend Coulas against the City's 2006 amended complaint and that because it failed to do so it is estopped from asserting policy defenses to oppose the City's garnishment claim (including the defense that Coulas waited too long to notify Auto-Owners of the City's lawsuit). In April 2017, Auto-Owners filed a cross-motion for summary judgment on its complaints for declaratory judgment. After a hearing, the trial court issued an order denying Coulas's motion and granting Auto-Owners' motion, without explanation.

[12]     The City and the Airport (but not Coulas) now appeal both rulings.

# Discussion and Decision

[13]     "When reviewing the grant or denial of summary judgment, we apply the same test as the trial court: Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1176 (Ind. 2017); *see also* Ind. Trial Rule 56(C).

[14]     We begin by addressing the trial court's denial of the City's motion for partial summary judgment, in which the City (along with Coulas and the Airport) sought a ruling that (1) Auto-Owners had a duty to defend Coulas against the City's lawsuit and (2) because Auto-Owners failed to do so, it is estopped from

asserting policy defenses (such as late notice) in response to the City's garnishment claim. The City relies primarily on our statement in *Employers Insurance of Wausau v. Recticel Foam Corp.* that "[i]f an insurer fails to defend under a reservation of rights or to seek a declaratory judgment that there is no coverage and is later found to have wrongfully denied coverage, the insurer may be estopped from raising policy defenses to coverage." 716 N.E.2d 1015, 1028 n.16 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*. Of course, this principle can apply only if the insurer had a duty to defend in the first place, and here, we conclude that Auto-Owners had no such duty with regard to the City's lawsuit.

[15] In Indiana, an insurer's duty to defend is broader than the duty to indemnify. *Seymour Mfg. Co. v. Commercial Union Ins. Co.*, 665 N.E.2d 891, 892 (Ind. 1996). It is the nature of the claim, not its merit, that establishes an insurer's duty to defend. *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). To determine whether an insurer has a duty to defend, we compare the underlying factual allegations of the complaint with the relevant provisions of the insurance policy. *Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1271-72 (Ind. Ct. App. 2009), *reh'g denied*, *trans. denied*. The duty to defend is triggered when the complaint alleges facts that might fall within the coverage of the policy. *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563 (7th Cir. 1997). "Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will the insurer be excused from defending its insured."

*Property-Owners Ins. Co. v. Virk Boyz Liquor Stores, LLC*, 219 F. Supp. 3d 868, 873 (N.D. Ind. 2016).

[16] The City contends that there were allegations in its amended complaint that "were consistent with the possibility that the damage complained of by Gary was caused by operations that Coulas conducted on behalf of Recycle West" and that Auto-Owners' duty to defend Coulas was therefore triggered. Appellants' Br. p. 16. For several reasons, we disagree. First, the City named Western Scrap Corporation as a defendant in the complaint, but it did not name Recycle West. Second, the body of the complaint describes Western Scrap's operations, but it makes no mention of Recycle West or its operations. Third, the only paragraph that mentions Coulas by name—a paragraph the City failed to address in its briefs—says that he, "at all relevant times, has been in charge of the operations of Western Scrap on the Property." In short, the City's complaint focused solely on the operations of Western Scrap, and as such, it did not allege facts that might be covered by the Auto-Owners policies, which focused solely on the operations of Recycle West.

[17] The City points out that its complaint defined "the Property" as "6901 W. Chicago" in Gary, the same address listed as the "LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY" in the Auto-Owners policies. The City maintains that the mere mention of this address created the possibility that Coulas would be found liable for conduct on behalf of Recycle West. We disagree. The City's complaint mentioned that address only in the course of describing Western Scrap's operations. *See* Appellants' App. Vol. II p. 51

("Western Scrap has, at all relevant times, operated the property located at 6901 W. Chicago, Gary, Indiana ('the Property') as a scrap yard and for other purposes."). Viewed in context, the City's inclusion of that address in the complaint did not implicate the coverage under the Auto-Owners policies.

[18] Because the City's complaint did not allege facts that might have fallen within the coverage of the Auto-Owners policies, Auto-Owners had no duty to defend Coulas against the City. That fact is fatal to the City's motion for partial summary judgment. More importantly, it is fatal to the City's garnishment claim against Auto-Owners. An insurer that has no duty to defend its insured also has no duty to indemnify its insured. *Dave's Detailing, Inc. v. Catlin Ins. Co.*, 13 F. Supp. 3d 935, 944 (S.D. Ind. 2014). Because Auto-Owners owes no duty to indemnify Coulas with regard to the City's lawsuit, there is nothing for the City to garnish, so its garnishment claim against Auto-Owners necessarily fails.

[19] That leaves the Airport's action and Auto-Owners' cross-motion for summary judgment. There is no dispute that the Airport's amended complaint triggered, at least initially, Auto-Owners' duty to defend, since it expressly alleges that Coulas's conduct on behalf of Recycle West contributed to the contamination. However, Auto-Owners contends that it designated evidence negating the Airport's claim that Recycle West (or Coulas acting on behalf of Recycle West) contributed to the contamination and that the trial court properly granted Auto-Owners' cross-motion for summary judgment, relieving Auto-Owners of any possible duty to indemnify—and therefore its duty to defend—with regard to the Airport's claims. The Airport responds that genuine issues of material fact

remain as to whether Recycle West contributed to the contamination, thereby precluding summary judgment for Auto-Owners.

[20] The resolution of this issue turns on the respective burdens of the parties in the summary-judgment context. "The moving party 'bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.'" *McCullough v. CitiMortgage, Inc.*, 70 N.E.3d 820, 824 (Ind. 2017) (quoting *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012)). To make such a showing, a moving party must designate evidence that, if uncontroverted, would negate a nonmovant's claim. *See Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014); *Ind. Dep't of State Revenue v. Rent-a-Center E., Inc.*, 963 N.E.2d 463, 466 (Ind. 2012); *see also* T.R. 56(C) (requiring the moving party to "designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion"). If the moving party makes this prima facie showing, the nonmoving party must then designate evidence establishing the existence of a genuine issue of material fact. *Hughley*, 15 N.E.3d at 1003.

[21] The Airport contends that Auto-Owners did not satisfy its initial burden and that, even if Auto-Owners did, the Airport responded with designated evidence showing a genuine issue of material fact. Auto-Owners argues the exact opposite: that it satisfied its initial burden and that the Airport's designated evidence failed to establish the existence of a genuine issue of material fact. We agree with Auto-Owners on both points.

[22] Auto-Owners designated a variety of evidence that would support a conclusion that Recycle West did not contribute to the contamination. First, there is evidence that Recycle West's operations were less intensive and more limited in time than Western Scrap/Summit's operations. Recycle West operated for two or three years in the mid-1990s and was in the business of collecting and baling paper for sale to recyclers, with petroleum products present only for use in machines (baler, forklifts, trucks). Appellants' App. Vol. IV pp. 133-35; Appellants' App. Vol. V pp. 40-43. Western Scrap/Summit, on the other hand, began operations in the 1970s and was in the business of crushing vehicles, which often still contained various petroleum products, for scrap. Appellants' App. Vol. IV pp. 129-131. Given the nature of the two businesses and the amount of time each business operated, the most likely culprit for the contamination is Western Scrap/Summit, not Recycle West.

[23] There is more. Coulas testified that he (1) was not "aware of any spills of any hazardous substance that occurred during the operation of Recycle West's business," (2) was not "aware of any expert opinion or report that has concluded that Recycle West's operations resulted in contamination," (3) was not "aware of any facts or evidence that Recycle West's operations in 1995 to 1997 resulted in any contamination," (4) did not believe "IDEM or the EPA ever made any claims against Recycle West regarding the 6901 West Chicago Avenue property or any adjacent properties," while IDEM did make such a claim against Western Scrap, and (5) did not believe "that the operations of Recycle West contaminated the Airport Authority's property with any

hazardous substances." Appellee's App. Vol IV p. 137. Also, Wuolukka testified that he was not "aware of any environmental contamination or spills" by Recycle West. *Id.* at 146-47. Moreover, the representative of the City and the Airport for purposes of the Trial Rule 30(B)(6) depositions testified that he (1) did not "know anything" about the operations of Recycle West, (2) was not "aware of any information that any hazardous substances were used in 1995 or 1996 by the Recycle West operation," (3) did not know whether Recycle West "used any hazardous chemicals in its operation," (4) did not "have a belief or contention about how . . . petroleum constituents got into the ground," (5) "wouldn't know" whether the Airport has "any facts or information or evidence that the petroleum contamination that is migrating from the scrapyard to the Airport Authority's property arose in any way from the operations of the Recycle West company," and (6) was not "aware of any expert opinion of another which would support the conclusion that the operations of Recycle West caused the contamination on airport's property." *Id.* at 128, 133-34. All of this evidence is consistent with the limited nature and duration of Recycle West's operations and with Recycle West not having caused any of the contamination.

[24] To the extent the Airport contends that Auto-Owners, in order to satisfy its initial burden, was required to designate **definitive** testimony or other evidence, presumably from an expert, that Recycle West "did not cause any" of the contamination or that Western Scrap/Summit "caused all" of the contamination, we disagree. As our Supreme Court has made clear, a party

moving for summary judgment is required to make only a "prima facie showing" that there are no genuine issues of material fact. *See Gill*, 970 N.E.2d at 637. "Prima facie" means "Sufficient to establish a fact or raise a presumption unless disproved or rebutted; based on what seems to be true on first examination, even though it ma[y] later be proved to be untrue." *Prima facie*, Black's Law Dictionary (10th ed. 2014). Here, the evidence designated by Auto-Owners—evidence of the difference between Western Scrap/Summit's operations and Recycle West's operations and evidence that key individuals are not aware of any spills or releases by Recycle West—constituted a prima facie showing that Recycle West did not cause any of the contamination. *See Hughley*, 15 N.E.3d at 1003.

[25] Auto-Owners having satisfied its burden, the Airport was then required to designate evidence establishing a genuine issue of material fact as to whether Recycle West contributed to the contamination. The Airport argues that it did so by designating evidence that Recycle West "used and stored a variety of petroleum products" (hydraulic oil, motor oil, transmission fluid, diesel fuel, gasoline, and antifreeze) because its operations included a paper baler, forklifts, and trucks. Appellants' Br. p. 25. The Airport asserts that this evidence supports a reasonable inference that "some of those substances were released by Recycle West and have contributed to the contamination." Appellants' Reply Br. p. 17. Again, we cannot agree. Concluding that Recycle West contributed to the contamination based solely on the fact that it used and stored petroleum products would be speculation, not a reasonable inference. "[M]ere speculation

cannot create questions of fact." *Beatty v. LaFountaine*, 896 N.E.2d 16, 20 (Ind. Ct. App. 2008), *trans. denied*.

[26] Because Auto-Owners made a prima facie showing that Recycle West did not cause any of the contamination, and because the Airport failed to respond with evidence creating a question of fact on the issue, the trial court properly granted Auto-Owners' cross-motion for summary judgment.[2]

[27] Affirmed.

Baker, J., and Kirsch, J., concur.

---

[2] This holding is not limited to the Airport's action; it also provides an alternative ground for affirming the trial court's grant of summary judgment in favor of Auto-Owners as to the City's action.