## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 21 2020, 9:02 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce P. Clark
St. John, Indiana

ATTORNEYS FOR APPELLEE

Dirck H. Stahl
L. Katherine Boren
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Smarte Carte, Inc.,

*Appellant/Defendant/Cross-Claim Defendant,*

v.

Simon Property Group, Inc., and SM Eastland Mall, LLC

*Appellees/Defendants/Cross-Claim Plaintiffs.*

December 21, 2020

Court of Appeals Case No.
20A-CT-975

Appeal from the Vanderburgh Circuit Court

The Honorable David D. Kiely, Trial Court Judge

Trial Court Cause No.
82C01-1104-CT-182

**Tavitas, Judge.**

# Case Summary

Smarte Carte, Inc. ("Smarte Carte") appeals the trial court's grant of summary judgment to Simon Property Group, Inc. and SM Eastland Mall, LLC (collectively, "the Simon Parties"). We affirm.

# Issues

Smarte Carte raises two issues, which we restate as:

I.     Whether the trial court properly granted summary judgment to the Simon Parties regarding Smarte Carte's indemnification of the Simon Parties.

II.    Whether the trial court properly awarded $45,113.08 in attorney fees to the Simon Parties.

# Facts

SM Eastland Mall, LLC, owned and operated Eastland Mall in Evansville, Indiana. Simon Property Group, Inc., "did not own or operate Eastland Mall or SM Eastland Mall, LLC," but is "the owner of an entity which was the general partner in the limited partnership that was the sole member of SM Eastland Mall, LLC." Appellant's App. Vol. II p. 139. IPC International Corporation provided security services at Eastland Mall.

In January 2009, Smarte Carte entered into a lease agreement with SM Eastland Mall ("Lease") that allowed Smarte Carte to place massage chairs at certain locations in the aisles at Eastland Mall. The Lease provided, in relevant part:

10. Indemnity and Exculpation of Landlord: (a) Tenant shall assume liability for and shall indemnify, defend, and hold harmless Landlord and any other owners of the Shopping Center, (and all their shareholders, partners, directors, related and affiliated entities, ground lessors, managers, management companies, employees, agents, guests, customers and invitees) against and from any and all liabilities, obligations, losses, penalties, actions, suits, claims, damages, expenses, disbursements (including legal fees and expenses), or costs of any kind and nature whatsoever in any way relating to or arising out of; (i) any act or omission of Tenant (including without limitation the acts or omissions of the Tenant's officers, directors, employees, agents, contractors, invitees, and/or licensees within the Shopping Center), (ii) any occurrence which takes place in or about the Space or, (iii) any damages to the Space. To the extent permitted by applicable law, Tenant's duty to indemnify Landlord under this paragraph will apply regardless of and will extend to cover losses caused by either Tenant's or Landlord's concurrent, comparative, or contributory negligence.

* * * * *

(e) The indemnification and waivers contained in this paragraph 10 shall survive expiration or early termination of this Lease.

*Id.* at 143-44. The Lease also provided:

28. Attorney's and Collector's Fees: If Landlord is required to bring or defend any litigation arising out of this Lease, or to enforce or defend the provisions hereof, Landlord shall recover from Tenant its reasonable attorney's fees and costs. Tenant further agrees to pay all of Landlord's costs of collection, including any collection fees charged by a collection agency, in the event of any default hereunder.

*Id.* at 147.

[5]  On January 18, 2010, John Bush was injured by a needle while sitting in a Smarte Carte massage chair at Eastland Mall.[1] The Simon Parties' claims administrator notified Smarte Carte of the incident and demanded that Smarte Carte or its insurer "defend and indemnify" the Simon Parties. *Id.* at 155. On June 30, 2010, Smarte Carte's liability insurer, Zurich American Insurance ("Zurich"), agreed to accept the tender of the defense and indemnity of the Simon Parties.

[6]  On April 1, 2011, John Bush and Leslie Bush ("the Bushes") filed a complaint against Smarte Carte and IPC International Corporation for negligence related to John Bush's injury from the needle puncture. Smarte Carte's amended answer and affirmative defenses, which was filed in June 2011, provided in part: "That the damages and/or injuries alleged to have been incurred by the plaintiff were caused in full or in part by non-parties, Simon Property Group, Inc. . . . and Shiatsu Plus, Inc. . . ."[2] *Id.* at 39.

[7]  In December 2011, the Bushes filed a motion to amend their complaint to add the Simon Parties and Shiatsu Plus as additional defendants after they were named as non-parties by Smarte Carte. *Id.* at 44. The amended complaint alleged, in part, that the defendants, including the Simon Parties, "failed to

---

[1] The record does not contain any information regarding the nature of the needle or Bush's injuries.

[2] Shiatsu Plus, Inc., apparently manufactured the massage chair at issue here.

maintain in a proper and safe manner the equipment on which the Plaintiff was injured which negligence cause[d] injury to the Plaintiff, John Bush."[3] *Id.* at 181.

[8] On December 29, 2011, the Simon Parties informed Smarte Carte of the complaint against the Simon Parties and again demanded that Smarte Carte defend and indemnify the Simon Parties. The Simon Parties also informed Smarte Carte that, in the event the Simon Parties were required to obtain local counsel to litigate the matter, the Simon Parties would expect Smarte Carte to reimburse the Simon Parties for attorney fees and costs. The Simon Parties asked for a response by January 13, 2012.[4]

[9] In January 2012, Smarte Carte filed an answer and affirmative defenses to the Bushes' amended complaint and alleged that Smarte Carte "did not have control over the area in question sufficient for the creation of a legal duty." Appellant's App. Vol. II p. 56. Smarte Carte no longer asserted a non-party defense regarding the Simon Parties or Shiatsu Plus.

[10] In March 2012, the Simon Parties filed an answer to the amended complaint and a cross-claim against Smarte Carte. In the cross-claim, the Simon Parties noted that, after the Simon Parties were added as defendants in the Bushes'

---

[3] The amended complaint named the Simon Property Group, Inc., as a defendant. The Bushes later requested to amend their amended complaint by inserting SM Eastland Mall, LLC after each place Simon Property Group, Inc. d/b/a Eastland Mall appeared in the amended complaint.

[4] The original letter lists a deadline of January 13, 2011, which is clearly a typographical error.

action, Smarte Carte failed to notify the Simon Parties of any intent to defend and indemnify the Simon Parties and took no actions to effectuate such a defense or indemnity. The Simon Parties alleged that Smarte Carte owed a duty to "assume liability for and indemnify, defend, and hold harmless [the Simon Parties] . . . ." *Id.* at 78. Accordingly, the Simon Parties requested judgment that Smarte Carte had the duty to defend and indemnify the Simon Parties and for a judgment sufficient to reimburse the Simon Parties for attorney fees and expenses incurred.

[11] In June 2012, Smarte Carte's counsel sent a letter to the Simon Parties requesting that Smarte Carte's counsel also represent the Simon Parties in the action. Smarte Carte's counsel, however, also pointed out that, pursuant to Rule 1.7 of the Indiana Rules of Professional Responsibility, a potential conflict of interest existed in counsel representing both Smarte Carte and the Simon Parties; the dual representation required a consent and conflict waiver by the Simon Parties. The Simon Parties refused to waive the conflict of interest, and Smarte Carte refused to pay for separate counsel for the Simon Parties.

[12] In December 2012, Smarte Carte filed an answer and affirmative defenses to the cross-claim. Smarte Carte alleged, in part, that Smarte Carte was "not responsible or liable for the negligence or willful conduct of" the Simon Parties. *Id.* at 111. In July 2017, Smarte Carte also filed its list of witnesses, exhibits, and specifications, which included the following contentions:

9. The defendant contends that there was no duty owed by Smarte Carte, Inc. to the plaintiffs at the time and place alleged in the plaintiff's Complaint.

10. The defendant contends that the alleged incident was caused, either singularly or jointly, by the actions and/or inactions of the plaintiff and/or the employees of the mall and security present at the time of the incident. Smarte Carte did not act or fail to act in any manner that caused or contributed to cause to the plaintiff's alleged incident nor did Smarte Carte violate any applicable regulations, codes or standards relative to this alleged incident.

* * * * *

12. The defendant contends that Smarte Carte did not have control of the subject area at the time the incident occurred sufficient to create a legal duty.

* * * * *

18. The defendant contends that the duty for securing and inspecting the subject area was the responsibility of the mall and/or its security.

Appellee's App. Vol. II pp. 8-9.

[13] In July 2018, the Simon Parties filed a motion for partial summary judgment on their cross-claim against Smarte Carte. The Simon Parties requested judgment on the issue of liability regarding "the Simon Parties' right to a defense by independent counsel separate from counsel representing Smarte Carte, Smart Carte's obligation to pay for the legal fees so incurred, and Smarte Carte's

obligation to indemnify the Simon Parties." Appellant's App. Vol. II p. 116. Smarte Carte filed a response to the Simon Parties' motion for partial summary judgment. Smarte Carte argued that: (1) the Simon Parties did not have the right to independent counsel because there was no conflict of interest; and (2) the Lease did not require Smarte Carte to indemnify the Simon Parties for the Simon Parties' "own negligence." Appellant's App. Vol. III p. 14.

[14] In March 2019, the Bushes entered into a settlement agreement with Smart Carte and the Simon Parties and requested dismissal of their claims with prejudice, which the trial court granted. The Simon Parties' cross-claim against Smarte Carte, however, was not settled and remained pending.

[15] On July 29, 2019, the trial court granted partial summary judgment to the Simon Parties. The trial court found:

> 1. The Simon Parties were and are entitled to independent counsel to defend against Plaintiffs' claims in this cause, and to prosecute the cross-claim against Smarte Carte herein, due to a conflict of interest between counsel for Smarte Carte and the Simon Parties.
>
> 2. Smarte Carte is obligated to pay for that independent counsel.
>
> 3. The Simon Parties were required to incur additional legal expense in prosecuting a cross-claim to compel Smarte Carte to provide and pay for such independent counsel, and Smarte Carte is obligated under the Lease to pay for those legal fees and expenses as well.

Appellant's App. Vol. II p. 27. The trial court further ordered:

> [P]artial summary judgment is hereby GRANTED and
> ENTERED in favor of the Simon Parties as to Smarte Carte's
> liability on the Cross-claim to compensate the Simon Parties for
> all attorney fees and expenses they have incurred in this matter,
> including such fees and expenses incurred in defending against
> the underlying Plaintiffs' claims and in prosecuting the Simon
> Parties' crossclaim to enforce the Lease, including all such fees
> and expenses incurred to date and through the date of a final
> judgment herein.

*Id.* The trial court set the matter for a hearing on the amount of attorney fees to be awarded.

[16] The Simon Parties filed an affidavit and petition for attorney fees. Smarte Carte filed a motion to strike and a response to the affidavit and petition for attorney fees. Smarte Carte contested the reasonableness and appropriateness of the fees requested in the affidavit and petition. After further briefing, on April 1, 2020, the trial court: (1) denied Smarte Carte's motion to strike; (2) found the Simon Parties' "fees and costs submitted to be reasonable"; (3) granted the Simon Parties' fee petition; and (4) entered final judgment for the Simon Parties. *Id.* at 30. Accordingly, the trial court awarded the Simon Parties "$42,972.75 in fees and $2,140.33 in costs, for a total judgment of $45,113.08" for attorney fees and costs. *Id.* Smart Carte now appeals.

# Analysis

## *I. Partial Summary Judgment*

[17] Smarte Carte first challenges the trial court's grant of partial summary judgment to the Simon Parties on the Simon Parties' cross-claim. Summary judgment is

appropriate only when the moving party shows there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018); *see also* Ind. Trial Rule 56(C). Once that showing is made, the burden shifts to the nonmoving party to designate appropriate evidence to demonstrate the actual existence of a genuine issue of material fact. *Schoettmer v. Wright*, 992 N.E.2d 702, 705-06 (Ind. 2013). When ruling on the motion, the trial court construes all evidence and resolves all doubts in favor of the non-moving party. *Id.* at 706. We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Id.* "We limit our review to the materials designated at the trial level." *Gunderson v. State, Indiana Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018), *cert. denied*, 139 S. Ct. 1167 (2019).

[18] The parties' arguments pertain to the Lease's indemnification clause. "'[I]ndemnification clauses are strictly construed and the intent to indemnify must be stated in clear and unequivocal terms.'" *BioConvergence, LLC v. Menefee*, 103 N.E.3d 1141, 1169 (Ind. Ct. App. 2018) (quoting *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132 (Ind. 1995)), *trans. denied*. "Indemnity agreements are subject to the standard rules and principles of contract construction." *Id.* If the words of an indemnity agreement are clear and unambiguous, they are to be given their plain and ordinary meaning. *Symons v. Fish*, __ N.E.3d __, __, 2020 WL 5792115, at *6 (Ind. Ct. App. Sept. 29, 2020). We will construe an indemnity agreement to cover all losses and damages to which it reasonably

appears the parties intended it to apply. *Id.* The interpretation of a written contract, including an indemnity provision, is a question of law. *BioConvergence*, 103 N.E.3d at 1169. We review questions of law de novo and owe no deference to the trial court's legal conclusions. *Id.*

### A. Sole Negligence

[19] Smarte Carte argues that, under the Lease, Smarte Carte was not responsible for the Simon Parties' sole negligence. Because the underlying litigation was settled and there was no determination of liability or allocation of fault, Smarte Carte argues that the Simon Parties could have been solely at fault, and thus, the indemnification agreement should not apply. The Simon Parties respond that Smarte Carte's duty to defend is broader than its duty to indemnify.

[20] The Simon Parties point out that this issue has been addressed in Indiana courts in the context of insurance law, which we find persuasive here.

> In Indiana, an insurer's duty to defend is broader than the duty to indemnify. It is the nature of the claim, not its merit, that establishes an insurer's duty to defend. To determine whether an insurer has a duty to defend, we compare the underlying factual allegations of the complaint with the relevant provisions of the insurance policy. The duty to defend is triggered when the complaint alleges facts that might fall within the coverage of the policy. "Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will the insurer be excused from defending its insured."

*City of Gary v. Auto-Owners Ins. Co.*, 116 N.E.3d 1116, 1121 (Ind. Ct. App. 2018) (internal citations omitted). We will, thus, compare the underlying factual

allegations of the Bushes' amended complaint with the relevant provisions of the Lease agreement to determine whether the amended complaint alleged facts that "might fall within" the indemnity provision. *Id.*

[21] Smarte Carte points to the following provision of the Lease: "To the extent permitted by applicable law, Tenant's duty to indemnify Landlord under this paragraph will apply regardless of and will extend to cover losses caused by either Tenant's or Landlord's concurrent, comparative, or contributory negligence." Appellant's App. Vol. II p. 144. Smarte Carte argues that the Lease did not require Smarte Carte to indemnify the Simon Parties for the Simon Parties' sole negligence under the Lease.

[22] The indemnity provision of the Lease, however, also required Smarte Carte to "assume liability for and [ ] indemnify, defend, and hold harmless" the Simon Parties "against and from any and all liabilities, obligations, losses, penalties, actions, suits, claims, damages, expenses, disbursements (*including legal fees and expenses*), or costs of any kind and nature whatsoever in any way relating to or arising out of; (i) any act or omission of [Smarte Carte], (ii) any occurrence which takes place in or about the Space or, (iii) any damages to the Space." *Id.* at 143-44 (emphasis added). This provision of the Lease clearly and unambiguously details Smarte Carte's obligation to the Simon Parties under the Lease.

[23] The Bushes' amended complaint alleged that John Bush was injured by a needle when he sat on Smarte Carte's massage chair and that the defendants,

including Smarte Carte and the Simon Parties, "failed to maintain in a proper and safe manner the equipment on which the Plaintiff was injured which negligence cause[d] injury to the Plaintiff, John Bush." *Id.* at 181. The allegations in the Bushes' amended complaint do not allege sole negligence of the Simon Parties. Rather, the allegations relate to an "occurrence" that took "place in or about" the area leased by Smarte Carte. *Id.* at 144. Accordingly, Smarte Carte had a duty to defend the Simon Parties with respect to the Bushes' amended complaint as clearly stated in the Lease. The trial court properly granted summary judgment to the Simon Parties on this argument.

## B. Independent Counsel

Smarte Carte also argues that the Simon Parties did not have the right to independent counsel. The parties rely on Rule 1.7(a) of the Indiana Rules of Professional Conduct, which provides:

> Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

"[T]he mere possibility of adverse effect upon exercise of free judgment prevents a lawyer from representing clients with opposing interests." *Robertson v. Wittenmyer*, 736 N.E.2d 804, 809 (Ind. Ct. App. 2000) (citing *In re Gerde*, 634 N.E.2d 494, 497 (Ind. 1994)). We have held, in the insurance context, that where "the interests of the insured and the insurer were in partial conflict, . . . the insurer should not defend, but, rather, as here, should reimburse the insured's personal counsel." *Snodgrass v. Baize*, 405 N.E.2d 48, 51 (Ind. Ct. App. 1980), *reh'g denied*.

Both parties rely on *Armstrong Cleaners, Inc. v. Erie Ins. Exch.*, 364 F. Supp. 2d 797 (S.D. Ind. 2005), which addressed a similar issue in the context of an insurer's potential conflict of interest.[5] *Armstrong Cleaners* held:

> Whether the potential conflict of interest is sufficient to require
> the insured's consent is a question of degree that requires some

---

[5] *Armstrong Cleaners* described the classic conflict of interest situation as follows:

> The classic example in Indiana law is a lawsuit by a person who has been shot and injured by the insured. The victim alleges in Count One that the insured shot him intentionally and in the alternative in Count Two that the insured shot him negligently. Under a typical liability insurance policy, coverage is available for negligent acts but not for intentional acts. The insurer therefore would benefit from either a defense verdict or a finding of intentional wrongdoing. The insured, on the other hand, would benefit from either a defense verdict or a finding of negligence. Absent informed consent of both the insurer and the insured, an attorney trying to represent both the insured and the insurer would face an insurmountable conflict of interest. *See Snodgrass v. Baize*, 405 N.E.2d 48, 51 (Ind. App. 1980) (explaining that in such a case, insurer should not defend but should reimburse the insured's personal counsel), citing *All-Star Ins. Corp. v. Steel Bar, Inc.*, 324 F.Supp.160, 165 (N.D. Ind. 1971) (in such cases the insurer "must either provide an independent attorney to represent the insured, or pay for the cost of defense incurred by the insured hiring an attorney of his choice"); accord, *Fireman's Fund Ins. Co. v. Waste Management of Wisconsin, Inc.*, 777 F.2d 366, 368-69 (7th Cir. 1985) (applying Wisconsin law, reservation of rights created a conflict of interest where plaintiffs charged Waste Management with contaminating groundwater through negligent or intentional acts, and that the equitable solution was to allow insured to select counsel "subject to the approval and at the expense of" the insurer).

*Armstrong Cleaners*, 364 F.Supp.2d at 806.

predictions about the course of the representation. If there is a reasonable possibility that the manner in which the insured is defended could affect the outcome of the insurer's coverage dispute, then the conflict may be sufficient to require the insurer to pay for counsel of the insured's choice. Evaluating that risk requires close attention to the details of the underlying litigation. The court must then make a reasonable judgment about whether there is a significant risk that the attorney selected by the insurance company will have the representation of the insureds significantly impaired by the attorney's relationship with the insurer.

*Armstrong Cleaners.*, 364 F.Supp.2d at 808.

[27] Here, the trial court concluded that the Simon Parties were entitled to independent counsel as a result of the conflict, and we agree. The incident at issue here occurred on January 18, 2010, and in June 2010, Smarte Carte's insurer, Zurich, agreed to accept the tender of defense and indemnity of the Simon Parties. When the Bushes filed a complaint against Smarte Carte, Smarte Carte named the Simon Parties as non-parties at fault in the incident, and the Bushes filed an amended complaint adding the Simon Parties as a defendant. Smarte Carte squarely created a conflict by alleging the Simon Parties were at fault. Although the Simon Parties again demanded that Smarte Carte defend and indemnify the Simon Parties, the Simon Parties did not receive a response to the demand. Instead, Smarte Carte filed an answer to the amended complaint and alleged that it "did not have control over the area in question." Appellant's App. Vol. II p. 56. In March 2012, the Simon Parties then filed a cross-claim against Smarte Carte for indemnification.

In June 2012, Smarte Carte's counsel sent a letter to the Simon Parties regarding Smarte Carte's counsel representing Simon Parties in the Bushes' action. The letter noted a potential conflict of interest, however, and asked the Simon Parties to execute a waiver of the conflict.[6] The Simon Parties refused to waive the conflict and requested independent counsel, which Smarte Carte refused. Smarte Carte's answer to the cross-claim alleged that it was "not responsible or liable for the negligence or willful conduct of" the Simon Parties. *Id.* at 111. Even in contentions filed in July 2017, Smarte Carte continued to deny that it had control over the area of the incident and attributed liability to employees of the mall and/or security personnel.

Despite the indemnification provisions here, Smarte Carte repeatedly blamed the Simon Parties for the incident. Smarte Carte argues that its insurer agreed to coverage and would be paying any judgment regardless of "whether or to the extent that liability was attributed to Smarte Carte or the Simon Parties." Appellant's Br. p. 22. This argument is hard to harmonize with Smarte Carte's demand of a waiver of conflict and Smarte Carte's assertion that the Simon

---

[6] Rule 1.7(b) of the Indiana Rules of Professional Conduct provides:

Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Parties were solely negligent. Under these circumstances, we find Smarte Carte's position disingenuous and easily conclude that counsel's representation of Smarte Carte was "directly adverse" to the Simon Parties or that there was a "significant risk" that counsel's representation of the Simon Parties would have been "materially limited by the lawyer's responsibilities to" Smarte Carte.

[30] Accordingly, a clear conflict existed here pursuant to Rule 1.7 of the Indiana Rules of Professional Conduct, and we find no authority that would have required the Simon Parties to waive such a conflict. *See, e.g., Bethlehem Steel Corp. v. Sercon Corp.*, 654 N.E.2d 1163, 1170 (Ind. Ct. App. 1995) ("[A] conflict of interest is not subject to a motion to compel its waiver."), *trans. denied*. The trial court properly concluded that the Simon Parties were entitled to independent counsel at Smarte Carte's expense. As such, the trial court properly granted the Simon Parties' motion for summary judgment.

## II. *Amount of Attorney Fees Awarded*

[31] Next, Smarte Carte challenges the amount of attorney fees awarded by the trial court. "We review a trial court's award of attorney's fees for an abuse of discretion." *River Ridge Dev. Auth. v. Outfront Media, LLC*, 146 N.E.3d 906, 912 (Ind. 2020). "An abuse of discretion occurs when the court's decision either clearly contravenes the logic and effect of the facts and circumstances or misinterprets the law." *Id.* "To make this determination, we review any findings of fact for clear error and any legal conclusions de novo." *Id.*

### A. Fees Incurred in Prosecution of the Cross-Claim

[32] Smarte Carte first argues that the fees awarded were excessive because the fees improperly included fees for the prosecution of the cross-claim. The Lease, however, provided: "If Landlord is required to bring or defend any litigation arising out of this Lease, or to enforce or defend the provisions hereof, Landlord shall recover from Tenant its reasonable attorney's fees and costs." Appellant's App. Vol. II p. 147. The Simon Parties were attempting to enforce the indemnification provision of the Lease. Accordingly, the Simon Parties were entitled to recover their reasonable attorney fees and costs for prosecution of the cross-claim against Smarte Carte to enforce the indemnification provision.

[33] Further, we noted in *BioConvergence* that: "An indemnitee, who incurs legal expenses through defending an action against him for which he is entitled to indemnification, is entitled to recover the expense of creating his defense, including reasonable attorney fees." *BioConvergence*, 103 N.E.3d at 1170 (quoting *Zebrowski & Assocs., Inc. v. City of Indianapolis, By & Through its Bd. of Directors for Utilities of its Dep't of Pub. Utilities*, 457 N.E.2d 259, 264 (Ind. Ct. App. 1983)). "[T]he indemnitee may recover attorney fees from the indemnitor incurred through an original action which is settled, and *also for the cost of prosecuting the indemnity clause.*" *Id.* (emphasis added). The trial court's award of attorney fees to the Simon Parties for prosecution of the cross-claim was, thus, not an abuse of discretion.

### B. Reasonableness

Smarte Carte also argues that the fees awarded were excessive because the evidence failed to demonstrate that the fees were reasonable. "In assessing what qualifies as a reasonable fee, trial courts have broad discretion in determining a fee award and may consider several factors." *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 178 (Ind. 2019). "When evaluating the reasonableness of an attorney fee award, the starting point is the hours worked and the hourly rate charged." *Himsel v. Indiana Pork Producers Ass'n*, 95 N.E.3d 101, 113 (Ind. Ct. App. 2018). "The trial court may consider a number of other factors, including the responsibility of the parties in incurring the attorney fees and the judge's personal expertise and knowledge." *Id.* "In addition, a court may consider the factors listed in Indiana Professional Conduct Rule 1.5(a) governing the reasonableness of a fee for disciplinary purposes, but it is not required to expressly do so." *Id.* at 113-14.

Smarte Carte first argues that the fees incurred prior to July 2012, when the "issue of separate counsel was apparently first asserted"; and the fees incurred prior to December 2012, when Smarte Carte filed an answer to the cross-claim, should have been excluded. Appellant's Br. p. 32. The requested fees were first incurred beginning in January 2012 after: (1) the Bushes filed their amended complaint against the Simon Parties; (2) the Simon Parties again demanded a defense and indemnification; and (3) Smarte Carte did not respond to the demand. In March 2012, the Simon Parties filed an answer to the Bushes' amended complaint and a cross-claim against Smarte Carte. The Lease clearly

required Smarte Carte to pay the Simon Parties' attorney fees to enforce Lease provisions, including the indemnification provision. That enforcement began in January 2012, and the trial court, accordingly, properly awarded attorney fees to the Simon Parties beginning in January 2012.

[36] Next, Smarte Carte argues that the Simon Parties' attorney fees are unreasonable because the initial hourly rate of $230.00 and later at a rate of $280.00 per hour is excessive for an insurance case; and "block billing," which Smarte Carte describes as grouping "several tasks" together, is not allowed in insurance defense actions. Appellant's Br. p. 33. The Simon Parties respond that "it is unfair to let a breaching insurer nit-pick costs later when it could have—had it honored its duty to defend—initially directed the defense in any reasonable way it wished." *Thomson Inc. v. Ins. Co. of N. Am.*, 11 N.E.3d 982, 1024 (Ind. Ct. App. 2014), *trans. denied*. We agree. The Simon Parties submitted the affidavit of an expert demonstrating the reasonableness of the fees submitted, and we cannot say that the trial court abused its discretion by granting $45,113.08 in fees and costs.

## Conclusion

[37] The trial court did not err by granting the Simon Parties' motion for partial summary judgment and awarding $45,113.08 in attorney fees. We affirm.

[38] Affirmed.

Kirsch, J., and Pyle, J., concur.